COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-100-CV

 

 

LUXURY TRAVEL SOURCE D/B/A                                         APPELLANTS

LTS LUXURY TOUR SOURCE,
LTD., 

MUKESH GOYAL A/K/A MUKESH


KUMAR, MAIN ST. TRAVEL
CENTER 

OF
MONSEY, INC., AND BEN WEBER                                                      

 

                                                   V.

 

AMERICAN AIRLINES, INC.                                                      APPELLEE

 

                                              ------------

 

            FROM THE 67TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. 
Introduction








This is an appeal from the trial court=s denial
of appellants= special appearances in the face
of allegations that they improperly bought and sold frequent flyer miles
awarded by appellee to its customers. 
Appellants Luxury Travel Source d/b/a LTS Luxury Tour Source, Ltd. (LTS),
Mukesh Goyal a/k/a Mukesh Kumar (LTS=s
principal), and Main St. Travel Center of Monsey, Inc. each raise a single
issue challenging the trial court=s denial
of their special appearances, claiming that they negated all alleged bases of
personal jurisdiction.  Appellant Ben
Weber, Main St.=s principal, brings two issues
challenging the denial of his special appearance:  (1) the Texas long-arm statute does not
authorize jurisdiction over him and (2) he negated all alleged grounds for
personal jurisdiction.  We affirm in part
and reverse and render in part.

II. 
Background

Appellee American Airlines, Inc., a Delaware
corporation with its headquarters in Fort Worth, Texas, sued appellants (1)
LTS, a British Columbia corporation with its principal place of business in
Vancouver; (2) LTS=s principal Goyal; (3) Main St.,
a New York corporation with its principal place of business in Rockland County,
New York; and (4) Main St.=s
principal Weber for tortious interference with contracts and business
relations, fraud, misappropriation, breach of contract, and violation of the
Texas trademark laws based on appellants= alleged
brokering of frequent flyer miles (AAdvantage7 travel
rewards) issued by American as an incentive to its customers who are AAdvantage7
members.  All four appellants filed
special appearances, which the trial court denied and from which appellants now
appeal.








In its third amended petition, American
specifically alleged the following as bases for asserting general and specific
jurisdiction over appellants:

!       LTS

acknowledges
that it has customers in Texas, estimating that less than ten percent of its
customers are Texas residents.  LTS
admits it purchases AAdvantage7 miles
and sells AAdvantage7 award tickets to its customers,
including Texas residents.  LTS=
business requires it to reach out to American in Texas.  It admittedly uses the AA.com website, whose
servers are hosted in Plano.  It also
admittedly calls American to make AAdvantage7 award
ticket reservations.  Many award tickets
involve first class travel in Texas. 
Once an award ticket is issued for that reservation, LTS sells the
ticket to their customers, including in Texas, who pay LTS for the ticket.

!       Goyal

admittedly has four AAdvantage7
accounts in four different names, of which one was obtained through the
Internet.  By signing up through AA.com,
he entered into two contracts with American, as to the AAdvantage7 program
and as to AA.com.  Under the latter=s
forum-selection clause, Goyal agreed that any lawsuit against American related
to use of the website must be brought in the courts of Tarrant County.  Hundreds of thousands of miles from these
accounts have been used to book award tickets for travel in Texas.

!       Main St.

admits it is bound by the terms
and conditions of the Airlines Reporting Corporation Agent Reporting Agreement
. . . and the American . . . Addendum to the ARC Agreement . . ., pursuant to
which Main St. agreed that disputes, such as this, arising out of the Addendum
are to be submitted to the courts of the State of Texas.








!       Weber

admits as president of Main St. he reached out to American in Texas by
telephone and email to do business with it, was dealing with American on a
daily basis, and the financial benefits reaped by that business would benefit
him personally in the long run.  However,
Weber failed to disclose to American that Main St. was defrauding the
AAdvantage7 program.@

 

III. 
Standard of Review

Whether a trial court has personal jurisdiction
over a defendant is a question of law, which we review de novo.  Moki Mac River Expeditions v. Drugg,
221 S.W.3d 569, 574 (Tex. 2007); TravelJungle v. Am. Airlines, Inc., 212
S.W.3d 841, 845 (Tex. App.CFort
Worth 2006, no pet.).  The plaintiff
bears the initial burden of pleading sufficient allegations to bring a
nonresident defendant within the provisions of the long‑arm statute.  Moki Mac, 221 S.W.3d at 574; TravelJungle,
212 S.W.3d at 845.  Once the plaintiff
does so, the burden shifts to the nonresident defendant to negate all alleged
jurisdictional bases.  Moki Mac,
221 S.W.3d at 574; TravelJungle, 212 S.W.3d at 845.  We review all of the evidence in making this
determination.  TravelJungle, 212
S.W.3d at 845.








When, as here, a trial court does not issue
findings of fact and conclusions of law with its special appearance ruling, we
infer all implied facts necessary to support the judgment and supported by the
evidence.  Moki Mac, 221 S.W.3d at
574; TravelJungle, 212 S.W.3d at 845. 
Because here the appellate record includes both the reporter=s and
clerk=s
records, however, these implied findings are not conclusive.  BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 795 (Tex. 2002); TravelJungle, 212 S.W.3d at 845.   We may review the trial court=s
resolution of disputed fact issues for legal and factual sufficiency under the
same standards of review that we apply in reviewing a jury=s or
trial court=s findings of fact at
trial.  TravelJungle, 212 S.W.3d
at 845.

IV. 
Personal Jurisdiction

A Texas court may assert personal jurisdiction
over a nonresident defendant only if the requirements of due process under the
Fourteenth Amendment and the Texas long‑arm statute are satisfied.  U.S. Const. amend. XIV, ' 1; Tex.
Civ. Prac. & Rem. Code Ann. '' 17.041B.045
(Vernon 2008);  Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413B14, 104
S. Ct. 1868, 1871B72 (1984); Moki Mac, 221
S.W.3d at 574.

A.  Long‑arm Statute








The Texas long‑arm statute
governs Texas courts= exercise of jurisdiction over
nonresident defendants.  Tex. Civ. Prac.
& Rem. Code Ann. '' 17.041B.045; BMC
Software, 83 S.W.3d at 795; TravelJungle, 212 S.W.3d at 845.  That statute permits Texas courts to exercise
jurisdiction over a nonresident defendant who Adoes
business@ in
Texas.  Tex. Civ. Prac. & Rem. Code
Ann. ' 17.042;
BMC Software, 83 S.W.3d at 795; TravelJungle, 212 S.W.3d at
845.  The statute lists some activities
that constitute Adoing business@ in
Texas, including (1) contracting with a Texas resident by mail or otherwise
when either party is to perform the contract in whole or in part in Texas, and
(2) committing a tort, in whole or in part, in Texas.  Tex. Civ. Prac. & Rem. Code Ann. ' 17.042;
Moki Mac, 221 S.W.3d at 574; TravelJungle, 212 S.W.3d at
845.  The list of activities set forth in
section 17.042 is not exclusive, however. 
BMC Software, 83 S.W.3d at 795; TravelJungle, 212 S.W.3d
at 845.

Even if a nonresident=s
activities constitute Adoing business@ under
section 17.042=s broad language, Texas courts
may exercise personal jurisdiction over a nonresident defendant only Aas far
as the federal constitutional requirements of due process will allow.@  Moki Mac, 221 S.W.3d at 575 (quoting Guardian
Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815
S.W.2d 223, 226 (Tex. 1991)); TravelJungle, 212 S.W.3d at 845.  Therefore, in determining whether a
nonresident defendant has met its burden to negate all bases of jurisdiction,
we rely on precedent from the United States Supreme Court and other federal
courts, as well as our own state=s
decisions.  BMC Software, 83
S.W.3d at 795; TravelJungle, 212 S.W.3d at 845B46.








B.     Due Process

Due process is satisfied when
(1) the defendant has established minimum contacts with the forum state and (2)
the exercise of jurisdiction comports with traditional notions of fair play and
substantial justice.  Int=l Shoe
Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); Moki
Mac, 221 S.W.3d at 575; TravelJungle, 212 S.W.3d at 846.  A nonresident defendant who has Apurposefully
availed@ itself
of the privileges of conducting business in a foreign jurisdiction, invoking
the benefits and protections of its laws, has sufficient minimum contacts with
the forum to confer personal jurisdiction on a court in that forum.  Burger King Corp. v. Rudzewicz, 471
U.S. 462, 474B76, 105 S. Ct. 2174, 2183B84
(1985); Moki Mac, 221 S.W.3d at 575. 
Three factors important in determining whether a defendant has
purposefully availed itself of the forum are (1) only the defendant=s
contacts with the forum count; (2) the acts relied on must be purposeful rather
than merely fortuitous; and (3) the defendant must seek some benefit,
advantage, or profit by availing itself of the forum.  Michiana Easy Livin=
Country, Inc. v. Holten, 168 S.W.3d 777, 785 (Tex. 2005); TravelJungle,
212 S.W.3d at 846; Karstetter v. Voss, 184 S.W.3d 396, 403 (Tex. App.CDallas
2006, no pet.).








Because of the unique and onerous burden placed
on a party called upon to defend a suit in a foreign legal system, the minimum
contacts analysis is particularly important when the defendant is from a different
country.  Asahi Metal Indus. Co. v.
Super. Ct. of Cal., 480 U.S. 102, 114, 107 S. Ct. 1026, 1033 (1987); BMC
Software, 83 S.W.3d at 795.  A
defendant should not be subject to a foreign court=s
jurisdiction based on random, fortuitous, or attenuated contacts.  Burger King, 471 U.S. at 475, 105 S.
Ct. at 2183; BMC Software, 83 S.W.3d at 795.  Rather, individuals must have fair warning
that a particular activity may subject them to the jurisdiction of a foreign sovereign.  Burger King, 471 U.S. at 472, 105 S.
Ct. at 2182; Guardian Royal, 815 S.W.2d at 226; TravelJungle, 212
S.W.3d at 846.

C.     General v. Specific Jurisdiction








Personal jurisdiction exists if
the nonresident defendant=s minimum contacts give rise to
either specific jurisdiction or general jurisdiction.  Helicopteros Nacionales de Colombia,
466 U.S. at 413B14, 104 S. Ct. at 1872; BMC
Software, 83 S.W.3d at 795; TravelJungle, 212 S.W.3d at 846.  A trial court has general jurisdiction over a
nonresident defendant when that defendant=s
contacts in a forum are continuous and systematic so that the forum may
exercise personal jurisdiction over the defendant even if the cause of action
did not arise from or relate to activities conducted within the forum
state.  Moki Mac, 221 S.W.3d at
575; TravelJungle, 212 S.W.3d at 846. 
In contrast, specific jurisdiction is present if the nonresident
defendant=s alleged liability arises from
or is related to an activity conducted within the forum.  Moki Mac, 221 S.W.3d at 575; TravelJungle,
212 S.W.3d at 846B47.  In other words, Athere
must be a substantial connection between those contacts and the operative facts
of the litigation.@ 
Moki Mac, 221 S.W.3d at 585. 
When a plaintiff asserts that a trial court has specific jurisdiction
over a nonresident defendant, the minimum contacts analysis focuses on the
relationship among the defendant, the forum, and the litigation.  Moki Mac, 221 S.W.3d at 575B76; Guardian
Royal, 815 S.W.2d at 227B28; TravelJungle,
212 S.W.3d at 846B47.








For a Texas trial court to have specific
jurisdiction over a nonresident defendant, it is not necessary that the
nonresident defendant=s conduct actually occur in
Texas, as long as the defendant=s acts
were purposefully directed towards Texas. 
Calder v. Jones, 465 U.S. 783, 789B90, 104
S. Ct. 1482, 1487 (1984); CSR Ltd. v. Link, 925 S.W.2d 591, 595
(Tex. 1996); TravelJungle, 212 S.W.3d at 847.  A[A]
defendant should reasonably anticipate being haled into court where the effects
of its conduct have been intentionally caused through the purposeful direction
of activity toward the forum state, even if the defendant never physically
enters the state.@ 
SITQ, E.U., Inc. v. Reata Rests., Inc., 111 S.W.3d 638, 646 (Tex.
App.CFort
Worth 2003, pet. denied) (quoting Cole v. The Tobacco Inst., 47 F. Supp.
2d 812, 815 (E.D. Tex. 1999)).

V.  LTS

LTS admits that it Apurchases
and barters@ AAdvantage7 reward
points.  It obtains customers via several
of its websites that offer to purchase AAdvantage7 reward
points or to sell travel on American. 
These websites function as LTS=s sole
means of advertising in Texas;[1]
it does not purchase print advertising, phone lists, or mailing lists.[2]








LTS obtains customers by allowing prospective
customers to submit information to LTS via a AContact
Us@ link on
one of the websites.  No other form of
communication occurs via the websites.[3]  Once a potential LTS customer sends its
written contact information via the AContact
Us@ link on
a website, a company representative contacts the potential customer at his or
her request by telephone or overnight courier. 
LTS estimates that approximately less than ten percent of its worldwide
customers are Texas residents.  It admits
that some of its customers may have flown through DFW airport on tickets booked
as a result of its activities.








American presented evidence that LTS buys
AAdvantage7 rewards points from customers,
some of whom live in Texas, and pays them by sending checks; some of those
checks are mailed to customers in Texas. 
LTS also obtains AAdvantage7 rewards
points from accounts opened up and maintained by its employees, including
Goyal; it then sells those points to third parties.  Goyal admitted that in conducting its
business, LTS sometimes accesses the AAdvantage7 rewards
chart, and possibly American=s flight
schedules, on American=s website, AA.com; American
presented evidence that the servers that power AA.com are located in Plano,
Texas.  LTS then calls American
reservations centers, one-third of which are in Texas, to make reservations for
a different customer using the AAdvantage7 rewards
points procured.[4]  After it makes a reservation, LTS provides
the reservation number to the customer from whom it purchased the AAdvantage7 rewards
points and instructs that customer to contact American to issue the
ticket.  American thus issues the ticket
in the name of the customer who is not an AAdvantage7 member
and that customer pays LTS for the ticket.[5]  Some of the customers who purchase tickets
from LTS are Texas residents.

American presented evidence that LTS directly
contacted at least two Texas residents by email[6]
and, for the purposes of obtaining the benefit of those customers=
AAdvantage7 rewards points, induced them to
contact American to issue tickets with those rewards points for existing
reservations that LTS had already made for the benefit of other customers.  LTS then sent checks to at least one of those
customers in Texas. 








Thus, there is some evidence that LTS used its
contacts with Texas residents to deliberately induce activity in Texas by
American, and LTS=s customers, to LTS=s benefit.  See SITQ, 111 S.W.3d at 653.  Additionally, part of LTS=s
agreements with its Texas customers, at least as to sales of reward points,
were performable in Texas.  See
Gutierrez v. Cayman Islands Firm of Deloitte & Touche, 100 S.W.3d 261,
271 (Tex. App.CSan Antonio 2002, pet. dism=d).  These contacts between LTS and Texas are
substantially connected to the operative facts underlying the causes of action
alleged by American:  its means of
contacting Texas residents and the activities that it induced in Texas are the
crux of American=s complaint.  Cf. Moki Mac, 221 S.W.3d at 584B85.  Accordingly, we conclude and hold that
American showed sufficient minimum contacts between LTS and Texas to satisfy
the requirements of due process.

LTS contends that this case is more akin to Michiana,
in which a Texas resident, unsolicited, contacted an Indiana company, which
sold that resident an RV that it manufactured in Indiana and then delivered to
Texas.  Michiana, 168 S.W.3d at
781, 784.  The supreme court determined
that Michiana=s contacts with Texas were too
attenuated to support personal jurisdiction; it had no contacts with Texas
other than the fact that one customer happened to place an order from
here.  Id. at 794.













But LTS=s
contacts here are not so attenuated that it could not have foreseen suit in
Texas.  Although at least two Texas
customers initiated contact through an LTS website,[7]
LTS=s
contacts went further than merely taking an order from a customer.  LTS deliberately induced its Texas customers
to undertake further activity in Texas, directed at a Texas business, in direct
contravention of an agreement between those residents and the Texas
business.  See Burger King, 471
U.S. at 472B73, 105 S. Ct. 2182B83
(holding that Afair warning@
requirement of due process is satisfied when nonresident defendant has
purposefully directed activities at forum residents).  Although Goyal estimated that AAdvantage7 rewards
points were LTS=s fourth most popular product,
American presented evidence that LTS used millions of points from Goyal=s
accounts alone.  And it is not difficult
to foresee that a large number of AAdvantage7 members
would be located in Texas, where American is headquartered.  American has also sued, in this same action,
Texas corporations that it alleges are engaged in the same activity for
profit.  For these reasons, we also
conclude and hold that subjecting LTS to personal jurisdiction comports with
traditional notions of fair play and substantial justice.  See Jones v. Beech Aircraft Corp., 995
S.W.2d 767, 774 (Tex. App.CSan
Antonio 1999, pet. dism=d w.o.j.).

Accordingly, we conclude and hold that the trial
court did not err by determining that LTS failed to negate all bases of
personal jurisdiction, particularly, specific jurisdiction; thus, the trial
court did not err by denying LTS=s
special appearance.  We overrule LTS=s sole
issue on appeal.

VI.  Goyal








Goyal is a Canadian citizen and the sole officer
and principal of LTS.  He has four
AAdvantage7 accounts in his own name, one
of which American alleges was established for him over the Internet.[8]  Goyal testified by deposition that these
accounts are his personal accounts but they are used for LTS=s
benefit.  According to Goyal, he obtained
the AAdvantage7 rewards points in his account
from purchasing Starwood[9]
credit card points, which were converted into AAdvantage7 rewards
points.  He authorized LTS to book
tickets on American in LTS=s
customers= names using rewards points from
his accounts.  Goyal contends that he did
not personally purchase or sell AAdvantage7 rewards
and that he does not have any customers; only LTS has customers.  But American presented evidence that LTS
redeemed AAdvantage7 rewards points through Goyal=s
personal AAdvantage7 accounts.  It also presented evidence that at least two
of LTS=s Texas
customers bought some of the tickets issued with AAdvantage7 rewards
points from Goyal=s accounts and that Goyal
himself booked at least one ticket.  

American also presented evidence that to use the
AAdvantage7 rewards, members must abide by
the terms and conditions governing the AAdvantage7 rewards
program, which bars members from purchasing, selling, or bartering the rewards
and award tickets.  Any customer
enrolling in the AAdvantage7 program
online must abide by the terms of the American Use Agreement, which states that
it is made and entered into in Tarrant County, Texas and governed by Texas
law.  It also states, AAny
lawsuit brought by you related to your access to, dealings with, or use of the
Site must be brought in the state or federal courts of Tarrant County, Texas.@   








American contends that Goyal is subject to
personal jurisdiction in Texas by virtue of both his individual contacts with
Texas and his acceptance of the Use Agreement upon signing up to be an
AAdvantage7 member.  But the Use Agreement, even if admissible and
binding upon Goyal,[10]
does not show that Goyal agreed to subject himself to the jurisdiction of the
Texas courts.  It clearly states that any
suit brought by Goyal against American must be brought in the courts of Tarrant
County, Texas.  But it does not
conversely say that Goyal agrees to subject himself to the jurisdiction of the
Texas courts for purposes of a suit against him arising out of his AAdvantage7
membership.  Accordingly, we conclude and
hold that the Use Agreement does not establish personal jurisdiction over
Goyal.  See Ramsay v. Tex. Trading Co.,
254 S.W.3d 620, 626 (Tex. App.CTexarkana
2008, pet. denied) (noting that courts construe forum selection clause in same
way as any other contract); Alenia Spazio S.p.A. v. Reid, 130 S.W.3d
201, 219 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied) (ABy agreeing to a Texas choice‑of‑law
provision, a party does not avail itself of any protection from Texas courts or
voluntarily submit to personal jurisdiction in Texas courts, absent an express
understanding to that effect.@).








Even if a nonresident corporate officer=s acts
were undertaken in a corporate capacity, that officer may still be subject to
personal jurisdiction in a forum if those actions were tortious or fraudulent
and if the tortious or fraudulent actions satisfy the three Michiana
minimum contacts factors:  (1) only the
defendant=s contacts with the forum count;
(2) the acts relied on must be purposeful rather than merely fortuitous; and
(3) the defendant must seek some benefit, advantage, or profit by availing
itself of the forum.[11]  Michiana, 168 S.W.3d at 785, 788B89; Niehaus
v. Cedar Bridge, Inc., 208 S.W.3d 575, 581 (Tex. App.CAustin
2006, no pet.); SITQ, 111 S.W.3d at 651. 
But the mere fact that a nonresident defendant could foresee that his
out-of-state actions would cause injury in Texas is not sufficient to hale the
nonresident into Texas to litigate that injury. 
Niehaus, 208 S.W.3d at 582; see Michiana, 168 S.W.3d at
789B90.













Although Goyal participated personally in LTS=s
actions towards TexasCby allowing LTS to use rewards
points from his personal AAdvantage7
accounts and by personally booking travel for at least one LTS customer using
AAdvantage7 rewards pointsCall of
Goyal=s
activity for which American adduced evidence occurred in Vancouver.  There was no evidence that he himself
personally induced Texas residents to engage in activities in Texas, nor that
he was aware of LTS=s employees=
directions to Texas residents to make misrepresentations to American regarding
the use of the customers= AAdvantage7 rewards
points.  Cf. SITQ, 111
S.W.3d at 650 (holding that evidence showing corporate officers=
individual participation in decision to terminate tenant=s leases
in Fort Worth building while directing others to assure tenants that leases
would not be terminated and that building would be rebuilt was sufficient to
establish minimum contacts as to officers individually).  Although there is evidence that Goyal
accumulated a significant amount of rewards points from Starwood, which he
deliberately converted to AAdvantage7 rewards
points that he allowed LTS to use, the evidence of his individual activity in
connection with LTS=s business does not rise to the
level of LTS=s purposeful availment of Texas=s
jurisdiction.  See Niehaus,
208 S.W.3d at 582B83 (holding that officers of
California corporation who gave themselves bonuses in same year corporation
failed to pay lease in Texas did not purposefully avail themselves of Texas=s
jurisdiction when all of their activities occurred in California and only
injury was felt in Texas).  Accordingly,
we conclude and hold that Goyal negated all bases of personal jurisdiction
asserted by American as to its claims against him in his individual capacity
and that the trial court thus erred by denying his special appearance.  We sustain his sole issue on appeal.

VII.  Main St.

Main St. is a New York travel
agency with its only place of business in Rockland County, New York.  It does not advertise or market its services
outside of New York, and it does not maintain a website or engage in online
solicitations.  Main St. obtains
customers by word of mouth and by advertising locally in New York.  It does not have an office, bank account, or
any other property in Texas, nor does it have any employees or a registered
agent in Texas.  

When Main St. gets a call from a potential
customer, it searches a Global Distribution System (GDS) for airfare, hotels,
or both.  It contracts with a third-party
GDS provider, Sabre, to obtain flight information via the GDS.








Main St. is authorized to sell and issue tickets
on American and other airlines as a party to an Airlines Reporting Agreement
among Main St., the Airlines Reporting CommissionCa
corporation owned by several airlines[12]Cand Aeach
carrier which is or may become a party to ARC=s
carrier service agreement and [which] has appointed [Main St.] as its agent for
the issuance of ARC traffic documents in connection with sales of air
transportation and/or ancillary services.@  A provision of the ARC Agreement requires
travel agents to Acomply with all instructions of
the carrier@ in issuing tickets.

American issued an addendum to the ARC Agreement
on April 1, 2005, which it amended on December 19, 2006.[13]  The 2005 and amended 2006 addenda each state
that selling tickets on American after the effective date constitutes an
agreement by the agent to the terms of the addendum.  Both addenda contain the following forum
selection clause:








THE LAWS OF THE STATE OF
TEXAS AND THE UNITED STATES OF AMERICA SHALL GOVERN ANY DISPUTES BETWEEN
AMERICAN AND AGENT ARISING OUT OF THE ARC AGREEMENT OR THIS ADDENDUM.  AGENT HEREBY SUBMITS AND CONSENTS TO THE
NON-EXCLUSIVE JURISDICTION OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF TEXAS AND THE COURTS OF THE STATE OF TEXAS FOR ALL THESE DISPUTES.

 

American contends that this addendum contains its
carrier-specific Ainstructions@ that
Main St. agreed to abide by in the ARC Agreement and that by continuing to sell
tickets on American, Main St. agreed to be bound by the forum selection
clause.  Main St. contends that the forum
selection clause should not be enforced against it because it was not signed by
either party, Main St. was not aware of the clause, and it is a contract of
adhesion.[14]








A court must presume that a forum selection
clause is valid and enforceable and must enforce the clause unless the opposing
party meets a Aheavy burden of proof@ to show
that (1) the clause was procured by fraud, undue influence, or overreaching or
(2) enforcement would be unreasonable and unjust.  M/S Bremen v. Zapata Off-Shore Co.,
407 U.S. 1, 17, 92 S. Ct. 1907, 1917 (1972); Michiana, 168 S.W.3d at
793; In re Boehme, 256 S.W.3d 878, 881 (Tex. App.CHouston
[14th Dist.] 2008, orig. proceeding). 
This is essentially a fundamental fairness inquiry; in determining the
fairness of such a clause, courts should consider (1) whether there is an
indication that the forum was selected to discourage legitimate claims, (2)
whether the opposing party was given adequate notice of the forum selection
clause, and (3) whether the opposing party retained the option of rejecting the
contract with impunity following notice of the forum selection clause.  Stobaugh v. Norwegian Cruise Line Ltd.,
5 S.W.3d 232, 235 (Tex. App.CHouston
[14th Dist.] 1999, pet. denied), (citing Carnival Cruise Lines, Inc.
v. Shute, 499 U.S. 585, 595, 111 S. Ct. 1522, 1528 (1991), cert. denied,
531 U.S. 820 (2000)).

American presented evidence through questioning
Weber in his deposition of a letter dated December 20, 2006 from its senior
vice president of global sales that notified agents that A[t]his
week American Airlines released an important update to its addendum to the ARC
Agent Reporting Agreement, ARC addendum.@  It also presented evidence that it kept a
list of the email addresses to which the letter was sent, including Main St.=s.  Further, American presented evidence that the
addendum was posted on AA.com in December 2006 as a news item.  When asked whether he accessed AA.com to
review the update, Weber answered, AProbably
not.@  








Weber testified that he was not aware that the
addendum was available on AA.com and that he did not recall receiving a
December 20, 2006 email with the letter regarding the update.  Weber signed the ARC Agreement in New York,
but he did not sign any of the addenda. 
He testified that he was not allowed to negotiate the terms of any of
the agreements; he Ajust had to take them as is.@  However, when asked whether American
represented to him that there would be no negotiation of the terms, Weber
answered, Athey just send [sic] me to sign.@  Weber admitted that he contacted American
almost daily in carrying out his business.








Contrary to Main St.=s
contention, American introduced at least some evidence that it notified Main
St. of the amended addendum, which did not substantively change the forum
selection clause that had been a part of the addendum since 1993.  Additionally, a party who signs an agreement
is presumed to know its contents, even those parts that incorporate other
documents by reference.  In re Lyon
Fin. Servs., 257 S.W.3d 228, 232 (Tex. 2008) (orig. proceeding); Mikey=s
Houses, LLC v. Bank of Am., N.A., 232 S.W.3d 145, 167 (Tex.
App.CFort
Worth 2007, no pet. [mand. pending]) (Livingston, J., dissenting).  Although Weber testified that he had to take
the ARC Agreement and addenda as they were presented to Main St., there is no
evidence that Main St. was obligated to sell tickets on American under the ARC
Agreement or that it was prohibited under the ARC Agreement from ceasing to
sell tickets on American at any time it wished. 
A bargain is not negated simply because one party may have been in a
more advantageous bargaining position; only if there is evidence of fraud,
unfair surprise, or oppression will a court refuse to enforce a forum selection
clause.  Lyon Fin. Servs., 257
S.W.3d at 233; see In re Vinogradova, 270 B.R. 159, 172 (Bkrtcy.
S.D.N.Y. 2001) (noting that relationship between travel agent and ARC in that
case was Aarm=s
length, commercial and contractual in nature@); cf.
In re Halliburton Co., 80 S.W.3d 566, 572 (Tex. 2002) (holding
arbitration provision not unconscionable even though employer made take-it-or-leave-it
offer to at-will employees), cert. denied, 537 U.S. 1112 (2003).  Moreover, a contract of adhesion is not per
se unconscionable or void.  Lyon Fin.
Servs., 257 S.W.3d at 233.

Main St. has been in the travel business since
April 1984.  It sells tickets not only to
individual customers, but it is also a wholesaler of tickets to about twenty
other travel agents.  In one of the
emails he sent to American in 2004, Weber represented that A[t]his
past year I had over 10 million dollars in sales.@ 








Based on the foregoing, we conclude and hold that
the forum selection clause in American=s
addendum to the ARC Agreement does not fail for lack of fundamental fairness;
Main St. has not met its Aheavy burden@ to
prove fraud, overreaching, or such a one-sidedness to the transaction that the
provision is unconscionable.  As such,
the trial court was obligated to enforce the provision.  See Michiana, 168 S.W.3d at 793.  We conclude and hold that the trial court did
not err by denying Main St.=s
special appearance, and we overrule Main St.=s sole
issue on appeal.

VIII. 
Weber

Weber is a New York resident and the president of
Main St.  He does not maintain a place of
business or residence in Texas.  According
to American, Weber does business in Texas through continuous contacts with
American, including emails, phone calls, letters, and various other matters
such as generating business and contract negotiations.[15]  To benefit Main St. by selling more tickets
on American, Weber, as president of Main St., dealt with American on a daily
basis.  Weber admitted that Main St.=s doing
more business with American benefitted him personally because it translated
into more profit for Main St.  According
to American, Weber=s contacts with American are
substantially connected to its claims against him because during those
contacts, he failed to disclose that Main St. was defrauding the AAdvantage7
program.  See Moki Mac, 221 S.W.3d
at 585.








American did not present any evidence that Weber=s
contacts with it were undertaken in any capacity other than as president of
Main St., nor did it present any evidence of alter ego or piercing the
corporate veil.  Thus, the analysis
applicable to Goyal, above, applies, and we must determine whether any alleged
fraudulent or tortious action by Weber satisfies the three Michiana
factors.  See Michiana, 168 S.W.3d
at 785, 788B89; Niehaus, 208 S.W.3d
at 581; SITQ, 111 S.W.3d at 651.








Although American presented some evidence that a
travel agent named Israel Odze booked tickets using AAdvantage7 rewards
points for third party customers using Main St.=s GDS
code, and that Weber admitted in a telephone conversation with an American
representative that Odze was an agent of Main St.=s, it
did not present evidence that Weber had any personal knowledge of Odze=s
activities.  American seeks to show Weber=s
knowledge by evidence that as president of Main St., he was responsible for Arunning
the place.@ 
But Weber testified that he thought Odze was located in Israel and that
Main St. sometimes allowed independent agents to use its GDS codes to book the
wholesale tickets it sold to those agents. 
There is no evidence that Odze operated out of Main St.=s
offices in a way that Weber would have necessarily had knowledge of Odze=s
activities; Main St. had several employees, including an employee responsible
for accounting.  Although American
rightly points out that the trial court was free to disbelieve Weber=s
testimony that he did not direct Odze to engage in any tortious conduct, it
nevertheless failed to present any evidence linking Weber directly to Odze=s
actions such that he could be charged with knowledge and approval of those
actions.  Cf. SITQ, 111
S.W.3d at 650.  Thus, we conclude and
hold that Weber negated American=s
alleged bases of personal jurisdiction and that, therefore, the trial court
erred by denying Weber=s special appearance.  We sustain Weber=s second
issue.[16]

IX.  Conclusion

Having determined that the trial
court did not err by denying LTS=s and
Main St.=s
special appearances, we affirm the trial court=s orders
denying their special appearances. 
However, having determined that the trial court erred by denying Goyal=s and
Weber=s
special appearances, we reverse the trial court=s orders
denying their special appearances and render judgment dismissing American=s claims
against each of them for want of personal jurisdiction.  See BMC Software, 83 S.W.3d at 801.

 

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, DAUPHINOT,
and MCCOY, JJ.

DELIVERED:  December 31, 2008 











[1]These websites are
accessible by internet users worldwide.





[2]LTS conducts all of its
operations in British Columbia.  It does
not have and has never had any physical presence in Texas.  It does not maintain an office, address,
phone listing, or registered agent in Texas. 
It does not have any agents, affiliated companies, bank accounts, or
property in Texas.





[3]In the past, the websites
displayed American=s business logo, as well
as other airlines= logos.





[4]All AAdvantage7 rewards are processed in
Texas by American.





[5]When LTS obtains points
from its employees= accounts, an LTS
representative books the tickets for the third party customers.





[6]American also presented
evidence that when a customer submits information on LTS=s websites, he or she is
asked to provide LTS with his or her city, state, zip code, home phone number,
and cell phone number.  One of the
customers averred that she found out about LTS through one of its websites, but
another customer averred that he did not know how LTS got his contact
information.





[7]Relying on Texas cases
involving internet communications, LTS also contends that it operated only a
passive website and did not actively solicit customers in Texas.  See, e.g., Reiff v. Roy, 115 S.W.3d
700, 705B06 (Tex. App.CDallas 2003, pet. denied)
(determining that company=s interactive website did
not constitute continuous and systematic contacts sufficient to support general
jurisdiction); Michel v. Rocket Eng=g Corp., 45 S.W.3d 658, 677B78 (Tex. App. Fort Worth
2001, no pet.) (determining that company=s passive website was not a Apurposeful activity
directed toward residents of [Texas] to be considered in determining whether
general jurisdiction exists@). 
However, our analysis does not turn on any allegation that LTS actively
solicited customers in Texas or any allegation that its website was so
interactive that it might have established the requisite contacts.  Accordingly, we do not find these cases
dispositive.





[8]Although Goyal swore in
his special appearance that he became a member by signing up on the internet,
he later testified in his deposition that he Alikely@ signed up over the
internet and that a person he could not remember Aprobably@ registered this account
for him via the internet.





[9]Starwood is a third party
program that offers rewards points to its participants.





[10]LTS and Goyal both
objected to the admissibility of the Use Agreement and both contend that it is
not binding upon them.  However, we need
not address these arguments because we determine that the Use Agreement does
not establish jurisdiction in this case. 
See Tex. R. App. P. 47.1; In re Roxsane R., 249 S.W.3d
764, 772 (Tex. App.CFort Worth 2008, orig.
proceeding).





[11]American did not urge any
other theory upon which to base Texas=s jurisdiction over Goyal in his individual
capacity, such as piercing the corporate veil. 
See Niehaus v. Cedar Bridge, Inc., 208 S.W.3d 575, 581 (Tex. App.CAustin 2006, no pet.); Tri-State
Building Specialties, Inc. v. NCI Building Sys., 184 S.W.3d 242, 250 (Tex.
App.CHouston [1st Dist.] 2005,
no pet.).





[12]AARC is a corporation
whose stockholders are the principal scheduled airlines of the United
States.  ARC serves as the national
clearinghouse for issuing blank ticket stock and other forms of traffic
documents to travel agents to be issued as air passenger tickets by travel
agents to their customers.@  In re
Vinogradova, 270 B.R. 159, 163 (Bkrtcy. S.D.N.Y. 2001).





[13]An earlier version of the
addendum effective in September 1993 contained the following forum selection
clause:

 

AGENT HEREBY SUBMITS AND CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF
THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS AND THE
COURTS OF THE STATE OF TEXAS IN ANY DISPUTES BETWEEN AMERICAN AND AGENT ARISING
OUT OF THE ARC REPORTING AGREEMENT OR THIS ADDENDUM.





[14]Main St. also contends
that the dispute does not come within the scope of the forum selection clause;
however, American alleges that Main St. sold tickets in violation of the terms
of the addendum and the ARC agreement, which obligates agencies to do business
with the carriers in good faith.  Thus,
if the forum selection clause is applicable to Main St., American=s claims fall squarely
within its scope.  See Deep Water
Slender Wells, Ltd. v. Shell Int=l Exploration & Prod., Inc., 234 S.W.3d 679, 687B89 (Tex. App.CHouston [14th Dist.]
2007, pet. denied).





[15]American concedes in its
surreply brief that its jurisdictional allegations against Weber relate only to
specific jurisdiction.





[16]Having determined that
Weber is entitled to relief on his second issue, we need not address his
first.  See Tex. R. App. P. 47.1.