TRI–STATE BUILDING SPECIALTIES, INC. d/b/a Western Garage Doors, Susan Hollister, and Jennie Bush, Appellants,

v.

NCI BUILDING SYSTEMS, L.P. d/b/a Able Door Manufacturing, Appellee.

No. 01–05–00083–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 6, 2005.

---

1. Because *Keller* appears to be in direct conflict with *Jordan,* we decline to follow it.

John "Lee" Arellano, Arellano & Associates, Houston, TX, for Appellant.

Curt M. Langley, Jackson Walker L.L.P., Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

Presenting a single issue, with two sub-issues, appellants, Tri–State Building Specialties, Inc. d/b/a Western Garage Doors ("Tri–State"), Susan Hollister ("Hollister"), and Jennie Bush ("Bush"), contend that the trial court erred in denying their special appearance,[1] which they filed in a suit brought against them by appellee, NCI Building Systems, L.P. d/b/a Able Door Manufacturing ("NCI").

We affirm in part and reverse and render in part.

### Factual and Procedural Background

Tri–State is a California corporation with its principal office located in Oceanside, California. Hollister is the president of Tri–State and Bush is its vice-president. Both Hollister and Bush are residents of California.

Tri–State purchased garage doors from Able Doors, a California company. At some point, Able Doors filed for bankruptcy protection and its assets were purchased by NCI. On March 12, 2004, Tri–State and NCI entered into a contract,

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2004–2005) (providing that parties may challenge by in-terlocutory appeal trial court orders regarding special appearances).

entitled "Application for Credit," which set forth the terms and conditions by which NCI would make sales to Tri–State. Included in the agreement was a forum selection clause, providing that all claims and disputes arising out of any transactions between NCI and Tri–State would be brought in state court in Harris County, Texas.

On June 29, 2004, NCI filed suit against appellants, presenting claims for "suit on account" and for breach of contract. NCI alleged that appellants had not paid it for goods and services provided to Tri–State by NCI on an open account and pursuant to a contract. NCI claimed an outstanding balance of $90,502.37. NCI's claims were supported by "Exhibit A," which was appended to the petition and expressly incorporated into it by reference. Included in the exhibit were (1) the affidavit of NCI's credit manager, averring that the amount due on the account was $90,502.37, (2) an "Accounts Receivable Aged Invoice Report," itemizing and detailing the transactions between NCI and Tri–State between the dates of December 16, 2003 and April 23, 2004, and (3) a copy of the Application for Credit.

Appellants did not file an answer, and NCI obtained a default judgment against them on October 25, 2004. On November 24, 2004, appellants filed a special appearance, and subject to the special appearance, a motion for new trial, a motion to quash defective service, and an original answer. Appellants filed an amended special appearance on December 16, 2004 and, subject to the special appearance, also amended their answer and the various, previously filed motions.

In the amended special appearance, appellants averred that Tri–State is a California company, with its corporate office in Oceanside, California. Tri–State conceded that, pursuant to the forum selection clause in the Application for Credit, it was subject to the jurisdiction of the trial court for those claims arising from transactions between it and NCI that postdate the signing of the Application for Credit on March 12, 2004. Conversely, Tri–State asserted that the trial court lacked personal jurisdiction over it for claims arising from transactions predating March 12, 2004. Tri–State stated that "$42,762.62 worth of [NCI's] claims fall outside the jurisdiction" of the trial court, i.e., those sums owed for transactions predating March 12, 2004. Tri–State asserted that it had consented to venue in Texas only for claims arising after March 12, 2004.

Hollister and Bush contested the trial court's in personam jurisdiction as to the entire proceeding, asserting that they had no contacts with Texas to support jurisdiction over them. Hollister and Bush also asserted that they are "merely employees" of Tri–State and, as such, could not be held personally liable for Tri–State's debts. The amended special appearance was supported by the affidavits of Hollister and Bush.

NCI filed a response to the amended special appearance, contending that Tri–State had "substantial and numerous contacts with Texas." NCI cited to the Application for Credit, appended to its original petition. NCI also asserted that Tri–State had sufficient minimum contacts with Texas before the signing of the March 12, 2004 Application for Credit. In this regard, NCI referenced Tri–State's own allegations in its amended motion for new trial and Exhibit A, attached to NCI's original petition. NCI alleged that the amended motion for new trial and Exhibit A evidenced that Tri–State engaged in communications and transactions in Texas before March 12, 2004.

NCI also asserted that Hollister and Bush were, as individuals, subject to the

jurisdiction of Texas courts because "Tri–State is not a viable corporation and its corporate privileges have been suspended by the California Secretary of State. It is well-established that officers and directors are personally and individually liable for debts of the 'corporation' when that corporation's corporate privileges are suspended or revoked." In support of this assertion, NCI cited both the Texas and California tax codes. Attached to its response, NCI offered a certificate from the California Secretary of State, indicating that Tri–State's corporate powers had been suspended.

At the special appearance hearing, appellants argued that NCI had pled no jurisdictional facts in its original petition, the live pleading at the time. Appellants argued that, because no jurisdictional facts had been pled by NCI, the only burden that they were required to meet was to show that they were not residents of Texas. Appellants contended that they had met this burden. NCI responded, *inter alia,* that Tri–State's special appearance should be denied based on the forum selection clause in the Application for Credit. NCI reiterated that Hollister and Bush were liable as officers because Tri–State's corporate privileges were suspended.

Following the hearing, the trial court signed an order denying appellants' special appearances.[2] This appeal ensued. Appellants bring one issue, with two sub-issues, contending that the trial court erred in denying their special appearances.

### STANDARD AND SCOPE OF REVIEW

"[P]ersonal jurisdiction concerns the court's power to bind a particular person or party." *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (orig.proceeding). A special appearance is used to challenge the trial court's jurisdiction over the person based on the claim that such person is not amenable to process in this State. *See* TEX.R. CIV. P. 120a.

■ Whether a court has personal jurisdiction over a defendant is a question of law. *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 805–06 (Tex.2002); *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002). But in resolving this question of law, a trial court must frequently resolve questions of fact. *Coleman,* 83 S.W.3d at 806; *BMC,* 83 S.W.3d at 794. On appeal, the trial court's determination to grant or deny a special appearance is subject to de novo review; however, appellate courts may be called upon to review the trial court's resolution of a factual dispute. *Coleman,* 83 S.W.3d at 806; *BMC,* 83 S.W.3d at 794. If the trial court does not issue findings of fact, reviewing courts should presume that the trial court resolved all factual disputes in favor of its judgment. *Coleman,* 83 S.W.3d at 806; *BMC,* 83 S.W.3d at 795. But these implied findings are not conclusive and may be challenged on appeal for legal and factual sufficiency, if the appellate record includes the reporter's and clerk's records. *BMC,* 83 S.W.3d at 795.

### IN PERSONAM JURISDICTION OVER TRI–STATE

In the first sub-issue, Tri–State contends that its special appearance should have been granted because (1) NCI's original petition alleged no jurisdictional facts and (2) Tri–State proved it is a nonresident. We disagree.

---

**2.** The trial court also determined that the motion to quash was moot and granted appel-

lants' motion for new trial.

 The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Id.* at 793. A nonresident defendant challenging personal jurisdiction through a special appearance carries the burden of negating all bases of personal jurisdiction. *Id.*

Here, NCI expressly incorporated Exhibit A, which included the Application for Credit, into its original petition.[3] In support of its amended special appearance, Tri–State offered uncontested evidence that it was not a Texas resident. Tri–State also relied on the Application for Credit to support its contention that, though the trial court had jurisdiction over it for post March 12, 2004 claims, Tri–State was not amenable to process issued by a Texas court for pre-March 12th claims. In its response, NCI cited the Application for Credit as supporting jurisdiction. At the special appearance hearing, NCI argued that, based on the forum selection clause, Tri–State had consented to jurisdiction in Texas.

Rule 120a(3) provides that "[t]he court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." TEX.R. CIV. P. 120a(3). Here, both sides relied on, and cited to, the Application for Credit, an attachment to the original petition incorporated into that pleading by reference. Under rule 120a, it was appropriate for the trial court to consider the Application for Credit and its forum-selection clause in determining whether it should grant Tri–State's special appearance.

In the Application for Credit's forum selection clause, Tri–State expressly agreed as follows:

Any disputes under this agreement shall only be brought in state court in the state of Texas. The parties hereto agree and stipulate that *venue shall be in Houston, Harris County, Texas, for any and all claims and disputes arising out of all transactions between [NCI] and [Tri–State].* [Tri–State] voluntarily agrees that Houston, Harris County, Texas, is the most convenient forum and understands the choice of forum is an integral part and vital part of [NCI's] agreement to sell to [Tri–State]. By agreeing to venue in Houston, Harris County, Texas, [Tri–State] fully intends to waive its rights, if any, to venue in any place other than Houston, Harris County, Texas. The parties deem that this agreement is performable by [NCI] in Houston, Harris County, Texas whether or not any part of this agreement is actually performed in Houston, Harris County, Texas. In addition, [Tri–State] agrees that [NCI's] prices reflect an analysis of the elimination of uncertainty regarding the jurisdiction for any dispute.

(Emphasis added.) The dispositive question that we answer is whether the trial court could have properly denied Tri–State's special appearance based on the forum-selection clause. *See Ace Ins. Co. v. Zurich Am. Ins. Co.,* 59 S.W.3d 424, 428 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (considering issue of consent to personal jurisdiction to be dispositive).

**3.** NCI also recited the following jurisdictional facts in its original petition: "Pursuant to a contract and agreement between the parties, [NCI] provided goods and services to [appellants] and [appellants] agreed to make payment for such goods and services in Houston, Harris County, Texas. . . . "

■ Two conditions must be met before a Texas court can exercise personal jurisdiction over a nonresident defendant such as Tri–State: the Texas long-arm statute must authorize the exercise of jurisdiction, and the exercise of jurisdiction must be consistent with the guarantees of due process. *BMC*, 83 S.W.3d at 795; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex.1990). Because the language of the long-arm statute is broad, its requirements are considered satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *CSR*, 925 S.W.2d at 594. In practice, the two conditions are conflated into one requirement of due process. *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 247 (Tex.App.-Houston [1st Dist.] 2004, pet. denied). Thus, the true determinative inquiry is one of federal constitutional due process. *See id.; see also Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991).

■ Unlike subject matter jurisdiction, personal jurisdiction is a waivable right. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–05, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982); *Abacan Technical Servs. Ltd. v. Global Marine Int'l Servs. Corp.*, 994 S.W.2d 839, 843–45 (Tex.App.-Houston [1st Dist.] 1999, no pet.). If a party signs a contract with a forum selection clause, then that party has either consented to personal jurisdiction or waived the requirements for personal jurisdiction in that forum. *Burger King*, 471 U.S. at 473 n. 14, 105 S.Ct. at 2182 n. 14; *Compagnie des Bauxites de Guinee*, 456 U.S at 703–05, 102 S.Ct. at 2105; *see Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964) (stating that "[I]t is settled ... that parties to a contract may agree in advance to submit to the jurisdiction of a given court ...."). This rule is a manifestation of the principle that personal jurisdiction is a legal right protecting the individual, not a limitation on the power of a court. *Compagnie de Bauxites des Guinee*, 456 U.S. at 704, 102 S.Ct. at 2105. As such, a party may bargain such right away when that party perceives the bargain as advantageous. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–94, 111 S.Ct. 1522, 1527, 113 L.Ed.2d 622 (1991) (recognizing that forum selection clause may benefit both parties through economies due to certainty and avoidance of multiple fora).

■ In a commercial context, as here, parties frequently "stipulate in advance to submit their controversies for resolution within a particular jurisdiction," for business or convenience reasons. *Burger King*, 471 U.S. at 473 n. 14, 105 S.Ct. at 2182 n. 14. Forum-selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972); *see also Burger King*, 471 U.S. at 473 n. 14, 105 S.Ct. at 2182 n. 14. The party opposing enforcement of the forum-selection clause carries a "heavy burden" of showing that the forum-selection clause should not be enforced. *M/S Bremen*, 407 U.S. at 15, 18, 92 S.Ct. at 1916, 1917. A forum selection clause will be invalidated only (1) if it was the product of fraud or overreaching, (2) if the agreed forum is so inconvenient as to deprive the litigant of his day in court, or (3) if enforcement would contravene a strong public policy of the forum in which the suit is brought. *Id.*, 407 U.S. at 15, 92 S.Ct. at 1916; *Abacan Technical Servs.*, 994 S.W.2d at 844.

In this case, Tri–State did not challenge the validity of the forum-selection clause. To the contrary, Tri–State relied on the clause when conceding that it was subject to the trial court's jurisdiction for claims that post-date March 12, 2004. Tri–State has not explained why the forum selection clause does not apply to pre-March 12, 2004 claims. In particular, Tri–State has not addressed the following language of the forum-selection clause:

> The parties hereto agree and stipulate that venue shall be in Houston, Harris County, Texas, for *any and all* claims and disputes arising out of *all transactions* between Seller [NCI][4] and Buyer [Tri–State].... Tri–State agrees that NCI's prices reflect an analysis of the elimination of uncertainty regarding the jurisdiction for *any dispute.*

(Emphasis added.) Such express language supports the contention that the forum-selection clause applies to all of NCI's claims against Tri–State.

Tri–State also does not assert that application of the forum-selection clause to the pre-March 12, 2004 claims would be unreasonable. Indeed, the plain and unequivocal language of the Application for Credit shows that the clause was freely negotiated and that the clause is mutually beneficial to both parties. Tri–State agreed that "Houston, Harris County, Texas is the most convenient forum and understands the choice of forum is an integral part and vital part of [NCI's] agreement to sell to Tri–State." Tri–State further agreed that "[NCI's] prices reflect an analysis of the elimination of uncertainty regarding the jurisdiction for any dispute." Tri–State acknowledged that, "By agreeing to venue in Houston, Harris County, Texas, [Tri–State] fully intends to waive its rights, if

any, to venue in any place other than Houston, Harris County, Texas." Tri–State also presented no arguments or evidence that (1) the clause was the product of fraud or overreaching, (2) "Houston, Harris County, Texas" is so inconvenient as to deprive Tri–State of its day in court, or (3) enforcement would contravene a strong public policy of the forum. *See M/S Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916.

We conclude that Tri–State did not negate all possible grounds for jurisdiction, and, more specifically, that it consented to jurisdiction. We hold that the trial court properly denied Tri–State's special appearance.

We overrule Tri–State's sub-issue that the trial court improperly denied its special appearance.

### IN PERSONAM JURISDICTION OVER HOLLISTER AND BUSH

In the second sub-issue, Hollister and Bush challenge the trial court's denial of their special appearance, contending that NCI failed to sufficiently show that they were individually liable for NCI's claims against Tri–State. We agree.

In its response to the amended special appearance, NCI contended that Hollister and Bush were individually liable for NCI's claims because Tri–State's corporate privileges had been suspended. Specifically, NCI asserted, "[A]bsent evidence that Tri–State is a viable corporation, Defendants Bush and Hollister are personally and individually liable for debts incurred by Tri–State when the corporation's corporate privileges are suspended or revoked."

---

**4.** The Application for Credit defined the term "Seller" as including NCI's predecessor Able Doors.

■ As discussed above, a nonresident defendant has the burden to negate all bases for personal jurisdiction. *BMC,* 83 S.W.3d at 793. One exception to that rule arises when the claimant asserts that personal jurisdiction exists based on an alterego theory. *See id.* at 798–99. The Texas Supreme Court has held that jurisdiction based on an alter ego theory cannot be found unless "[t]he party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities [proves] this allegation." *Id.* at 798. The underlying reason for shifting the burden to the claimant is that "Texas law presumes that two separate corporations are indeed distinct entities...." *Id.* Though it was reached in the context of an assertion of alter ego and was based on the presumption of separate identity between corporations, the holding can logically be extended to the assertion of officer liability made in this case. This is because the same presumption of legal separateness exists with regard to a corporation and its officers. *See Pabich v. Kellar,* 71 S.W.3d 500, 507 (Tex.App.-Fort Worth 2002, pet. denied) ("A corporation is a separate legal entity that normally insulates its owners or shareholders from personal liability."); *Wynne v. Adcock Pipe and Supply,* 761 S.W.2d 67, 68 (Tex.App.-San Antonio 1988, writ denied) ("The legal concept that a corporation is a distinct entity separate from its stockholders, officers and directors is fundamental to the law of corporation.").

■ To support its assertion of officer liability, NCI relied on Texas Tax Code subsection 171.255(a), which provides as follows:

If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived.

Tex. Tax Code Ann. § 171.255(a) (Vernon 2002).

In this case, NCI seeks to recover monies owed for transactions that, according to its own petition, occurred between December 16, 2003 and April 23, 2004. Officers' liability for payment corporate debts attaches to debts created or incurred after the date that "the report, tax, or penalty" was due. *Id.; see Wilburn v. State,* 824 S.W.2d 755, 762 (Tex.App.-Austin 1992, no writ). Thus, to hold Hollister and Bush personally liable for any of the claims arising from these transactions, NCI was required to show that the report, tax, or penalty, which led to the suspension of Tri–State's corporate privileges, was due no later than April 23, 2004. *See Wilburn,* 824 S.W.2d at 762 (holding directors and officers became personally liable for debts created or incurred after franchise tax due date); *see also Serna v. State,* 877 S.W.2d 516, 519 (Tex.App.-Austin 1994, writ denied) (recognizing that contractual obligations entered into before forfeiture of corporate privileges do not impose liability on officers or directors for payments that are due after forfeiture).

In support of its assertion, NCI offered a "Domestic Corporation Certificate of Filing and Suspension" ("the certificate") from the California Secretary of State, which stated, *inter alia,* as follows:

I, KEVIN SHELLEY, Secretary of State of the State of California, hereby certify:

. . . .

That on June 1, 2004, pursuant to the provisions of the California Bank and Corporation Tax Law, more particularly Section 23302 of the Revenue and Taxation Code, the Franchise Tax Board

transmitted a list to this office containing the names of domestic corporations, the exercise of whose corporate powers, rights and privileges had been suspended under the law, which included [Tri–State].

Although it evidences that the Franchise Tax Board forwarded a list to the California Secretary of State on June 1, 2004, identifying Tri–State as a suspended corporation, the certificate offered by NCI does not show the date on which the report, tax, or penalty at issue was due, the relevant date under Tax Code subsection 171.255(a). TEX. TAX CODE ANN. § 171.255(a).

In addition, NCI failed to offer proof that Tri–State's corporate privileges had been "forfeited" as required by subsection 171.255(a). *Id.* Rather, the certificate offered by NCI evidenced that Tri–State's corporate powers, rights and privileges had been "suspended." NCI has made no showing that these terms are legally synonymous in the corporate law context. In fact, California law has made a distinction between forfeiture and suspension of corporate privileges for failure to pay franchise taxes. *See Graceland v. Peebler,* 50 Cal.App.2d 545, 547–48, 123 P.2d 527 (1942) (concluding that terms "forfeited" and "suspended" are not interchangeable in context of 1917 tax statute governing loss of corporate rights and privileges for failure to pay franchise taxes); *see also* CAL. REV. & TAX CODE ANN. § 23301 (West 2004) (providing that corporate powers, rights, and privileges of domestic taxpayer will be "suspended" for nonpayment of certain taxes, penalties, and interest, but corporate powers, rights, and privileges of foreign corporation will be "forfeited" for same nonpayment).

Moreover, NCI offered no legal argument or authority showing that subsection 171.255(a) applies when the circumstances involve a corporation that has had its corporate privileges suspended in another state for nonpayment of taxes in that jurisdiction. It is well-settled that section 171.255 must be strictly construed to protect those individuals against whom liability is sought because it is penal in nature and cannot be extended beyond the clear meaning of its language. *Wilburn,* 824 S.W.2d at 760; *McKinney v. Anderson,* 734 S.W.2d 173, 174 (Tex.App.-Houston [1st Dist.] 1987, no writ); *see Schwab v. Schlumberger Well Surveying Corp.,* 145 Tex. 379, 198 S.W.2d 79, 81 (1946) (construing predecessor statute).

Chapter 171 of the Tax Code, of which section 171.255 is a part, governs franchise taxation *in Texas. See* TEX. TAX CODE ANN. §§ 171.001–.894 (Vernon 2002 & Vernon Supp.2004–2005). Franchise taxes governed by that chapter are taxes on the privilege of transacting business *within Texas. See Wilburn,* 824 S.W.2d at 761. As Texas courts have recognized, section 171.255 is a revenue measure, the purpose of which is to enforce collection of Texas franchise taxes. *See Williams v. Adams,* 74 S.W.3d 437, 440 (Tex.App.-Corpus Christi 2002, pet. denied); *G. Richard Goins Const. Co., Inc. v. S.B. McLaughlin Assocs., Inc.,* 930 S.W.2d 124, 128 (Tex. App.-Tyler 1996, writ denied).

Although not expressly stated in Chapter 171, it is logical that subsection 171.255(a) applies only to corporations that have failed to file a report or to pay a tax or penalty as required by Texas law. That is, it follows that subsection 171.255(a) applies when a corporation has its corporate privileges forfeited in Texas, not in California. Here, NCI has not shown that subsection 171.255(a) applies to Tri–State, a California corporation, whose corporate rights and privileges were suspended by California authorities for noncompliance with California tax laws. In addition, NCI

has not offered any evidence showing that Tri–State's corporate privileges have been forfeited by Texas authorities for non-compliance with Texas tax law. Thus, we conclude that NCI did not meet its burden to show that Hollister and Bush are personally liable pursuant to Texas Tax Code subsection 171.255(a) for NCI's claims against Tri–State.

NCI also relies on California Revenue and Tax Code section 23301 as authority to support officer liability in this case. *See* CAL. REV. & TAX CODE ANN. § 23301. Despite this reliance, section 23301 does not make a corporation's officers liable for debts incurred during suspension of corporate privileges, as alleged by NCI. *See id.* Rather, section 23301 provides only for suspension or forfeiture of "corporate powers, rights and privileges" for non-payment of a required tax, penalty, or interest. *See id.* NCI did not show that Hollister and Bush can be held individually liable for Tri–State's debts under California Revenue and Tax Code section 23301.[5] *See Bank of America Nat'l Trust & Sav. Assoc. v. Morse*, 265 Or. 72, 508 P.2d 194, 196 (1973) (holding that California Revenue and Tax Code section 23301 does not authorize officer liability for corporate debts when corporate powers are suspended).

In sum, we conclude that NCI did not meet its burden to establish officer liability. Any implied findings of fact or conclusions of law by the trial court that Bush and Hollister can be held individually liable for NCI's claims against Tri–State are not supported by sufficient evidence or by

the law. We hold that the trial court improperly denied Hollister's and Bush's special appearances.

We sustain Hollister's and Bush's sub-issue challenging the trial court's denial of their special appearances.

### CONCLUSION

We affirm the order of the trial court denying Tri–State's special appearance and we reverse the order of the trial court denying Hollister's and Bush's special appearances and render judgment dismissing NCI's claims against Hollister and Bush for lack of jurisdiction.

---

5. In its appellee's brief, NCI cites two California cases as support for its contention of officer liability. The cited cases are (1) *Sade Shoe Co. v. Oschin & Snyder*, 217 Cal.App.3d 1509, 266 Cal.Rptr. 619 (1990) and (2) *CM Record Corp. v. MCA Records, Inc.*, 168 Cal. App.3d 965, 214 Cal.Rptr. 409 (1985). However, neither of these cases stand for the proposition that officers can be held liable for a corporation's debts when the corporation's powers have been suspended; rather, these cases involve the issue of whether a corporation has legal capacity to prosecute a claim when its corporate powers have been suspended for failure to comply with tax requirements. *See Sade Shoe*, 217 Cal.App.3d at 1513, 266 Cal.Rptr. 619; *CM Record*, 168 Cal.App.3d at 968–69, 214 Cal.Rptr. 409.