**Affirmed and Memorandum Opinion filed October 20, 2011**



In The

# 𝕱ourteenth 𝕮ourt of 𝕬ppeals

## NO. 14-10-01077-CV

**DOMINIC MARROCCO, Appellant**

**V.**

**MARK HILL, Appellee**

**On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2010-05438**

## MEMORANDUM OPINION

This is an accelerated, interlocutory appeal from the trial court's order denying appellant Dominic Marrocco's special appearance. Marrocco contends that the trial court erred because he has not consented to Texas' jurisdiction, and, alternatively, that the enforcement of a forum-selection clause against him would be unreasonable and unjust. We affirm.

I

Sometime in 2008, Marrocco, a U.K. citizen and Nevada resident, began negotiating a partnership agreement with appellee Mark Hill. This agreement formalized

Hill's position with iDesta USA, LLC, a Nevada limited-liability company. The parties dispute whether Marrocco was negotiating in his individual capacity or as a representative of iDesta Solutions, LP, a company both parties admit has never existed.[1] They also agree that Marrocco signed an agreement explicitly naming only himself and Hill as parties and frequently mentioning Marrocco by name. For example, the agreement includes this provision, referring specifically and repeatedly to Marrocco:

> II. DEFINITIONS
>
> . . .
>
> D. "Good Reason" shall mean Mr. Hill's resignation or termination due to the occurrence of any of the following without Mr. Hill's prior consent:
>
> > (1) a willful failure by Mr. Marrocco to substantially perform the obligations under this Agreement;
> >
> > (2) a willful act by Mr. Marrocco that constitutes intentional misconduct and that is materially and demonstrably injurious to Mr. Hill;
> >
> > (3) a willful breach by Mr. Marrocco of a material provision of this Agreement;
> >
> > (4) a willful violation of a federal or state law or regulation by Mr. Marrocco applicable to the business of the Company[2] that is materially and demonstrably injurious to Mr. Hill;
> >
> > (5) commission of any material act of fraud by Mr. Marrocco with respect to Mr. Hill;
> >
> > . . . [or]
> >
> > (12) the failure of Mr. Marrocco to obtain the written assumption of this Agreement by any successors of the Company . . . .

---

[1] Marrocco is an officer of a U.K. company named iDesta Solutions, Limited.

[2] "Company" is defined in the agreement as iDesta USA.

2

The agreement's "Governing Law and Venue" clause provides that Texas law will govern the contract and that "[a]ny litigation related to the terms of this Agreement shall be filed in Harris County District Court, Houston, Texas." The agreement also contains a merger clause and a clause providing that "[o]ral changes to this Agreement shall have no effect." Before signing, Marrocco and Hill orally discussed certain changes to the agreement Marrocco desired. Eventually, both parties signed the agreement; the signature page notably included the first and only appearance of the name "iDesta Solutions, LP":

> IN WITNESS WHEREOF, each of the parties has executed this Agreement, in the case of the Company by its duly authorized officer, as of the date first set forth above.
>
> IDESTA SOLUTIONS, LP
>
> By: */s/ Dominic Anthony Marrocco*
>
> Dominic Anthony Marrocco
> . . .
>
> MARK A. HILL
>
> By: */s/ Mark A. Hill*
>
> Mark A. Hill
> . . .

Shortly after the parties signed the agreement in November 2008, Marrocco and Hill exchanged several emails attaching amended versions of the agreement. There is some dispute as to whether the parties executed any of these amended agreements, but they worked together for more than a year before Hill sued Marrocco in Harris County district court for breach of the partnership agreement, unjust enrichment, and *quantum meruit*. Marrocco contested the court's jurisdiction and filed a special appearance. After a hearing, the trial court denied Marrocco's special appearance. This appeal followed.

II

Whether a trial court has personal jurisdiction over a defendant is a question of law we review de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007), *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as in this case, the trial court issues no findings of fact or conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software*, 83 S.W.3d at 795. But when the appellate record includes the reporter's and clerk's records, parties can challenge the legal and factual efficiency of these implied factual findings. *Id.*; *Info. Servs. Grp., Inc. v. Rawlinson*, 302 S.W.3d 392, 397 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

The plaintiff has the initial burden of pleading sufficient allegations to bring the nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software*, 83 S.W.3d at 793; *Rawlinson* 302 S.W.3d at 397. A defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases. *BMC Software*, 83 S.W.3d at 793; *Rawlinson*, 302 S.W.3d at 397.

Texas courts may exercise jurisdiction over a nonresident if the Texas long-arm statute authorizes the exercise of jurisdiction and the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 795. The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in the state. Tex. Civ. Prac. & Rem. Code § 17.042. The Texas Supreme Court has interpreted the broad language of the Texas long-arm statute to extend Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software*, 83 S.W.3d at 795.

Personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) The defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play

4

and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *BMC Software*, 83 S.W.3d at 795. Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposely avails himself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws. *Int'l Shoe*, 326 U.S. at 319; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). In determining whether a defendant has purposely availed himself of the forum, courts should remember that only the defendant's contacts with the forum matter, the acts relied on must be purposeful rather than merely fortuitous, and the defendant must seek some benefit, advantage, or profit by availing himself of the forum. *Michiana*, 168 S.W.3d at 785.

Texas courts may exercise two types of jurisdiction based on a nonresident's contacts with the state. If the defendant has made continuous and systematic contacts with the forum, general jurisdiction is established regardless of whether the defendant's alleged liability arises from those contacts. *Moki Mac*, 221 S.W.3d at 575; *BMC Software*, 83 S.W.3d at 796. In contrast, when specific jurisdiction is alleged, we focus the minimum-contacts analysis on the relationship among the defendant, the forum, and the litigation. *Moki Mac*, 221 S.W.3d at 575–76. Specific jurisdiction is established if the defendant's alleged liability arises out of or is related to an activity conducted within the forum. *Id.* at 576. For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Id.* at 585. To identify the operative facts of the litigation, we select those facts that would be the focus of the trial. *See id*; *Rawlinson*, 302 S.W.3d at 398. Here, the appellee alleges only specific jurisdiction.

A defendant may also waive his right to contest personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985); *Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 248 (Tex. App.—Houston [1st Dist.] 2005, no pet.). A mandatory forum-selection clause is one of several ways a litigant may expressly

or impliedly consent to personal jurisdiction. *Burger King*, 471 U.S. at 473 n.14; *Tri-State*, 184 S.W.3d at 248.

Forum-selection clauses are generally enforceable and presumptively valid. *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (per curiam). A trial court abuses its discretion in refusing to enforce the clause unless the party opposing enforcement clearly shows (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial. *Id.* The burden of proof is heavy for the party challenging enforcement. *Id.*

### III

Marrocco relies on *Roe v. Ladymon* in asserting that he signed the partnership agreement in a representative capacity for iDesta Solutions, LP, and not in his personal capacity. *See* 318 S.W.3d 502 (Tex. App.—Dallas 2010, no pet.). *Ladymon* dealt with a partner who signed an agreement in his representative capacity for a limited-liability partnership, and the court concluded that, "by signing the contract as an agent for a disclosed principal, [the partner] did not become personally bound by the terms of that contract . . . ." *Id.* at 521. We find that case to be easily distinguished.

In *Ladymon*, Kimberlea Roe contracted for Metro Townhomes & Homes, L.L.P., to renovate her home. *Id.* at 507. The contract defined Roe as the "Owner" and Metro as the "Contractor." *Id.* Blane Ladymon, a Metro partner, signed the contract on behalf of Metro and initialed each page in the blank for "Contractor." *Id.* at 515. Ladymon was never identified in the contract as a party, and the signature block clearly showed him to be a Metro representative:

CONTRACTOR:

METRO TOWNHOMES & HOMES, L.L.P.

6

By: */s/ Blane Ladymon*

Printed Name: *Blane Ladymon*

Its: *Partner*

*Id.* at 515, 515 n.13.

The agreement signed by Marrocco was fundamentally different. Marrocco himself *was* named as a party and was identified several times in the agreement as having contractual duties to Hill. And, though IDESTA SOLUTIONS, LP, does appear above Marrocco's signature, the name appears to be more an anomaly than an indication that Marrocco was acting in a representative capacity. This is the first and only appearance of that name in the contract, and whereas the contract at issue in *Ladymon* explicitly named Ladymon as a partner of Metro, there is nothing in the partnership agreement here that indicates any relationship whatsoever between Marrocco and iDesta Solutions, LP.[3]

Thus, despite being named himself as a party and explicitly given responsibilities within the agreement, Marrocco contends a single, unexplained appearance of a nonexistent company's name protects him from personal liability. We are unconvinced and hold that Marrocco signed the agreement in his individual capacity and is thus bound by its terms, including the forum-selection clause.[4]

---

[3] Marrocco argues that the statement preceding his signature shows this relationship: "[E]ach of the parties has executed this Agreement, in the case of the Company by its duly authorized officer . . . ." That statement is irrelevant, however, because the agreement explicitly defines "Company" as iDesta USA—which is not listed on the signature page at all.

[4] Even if we were convinced that Marrocco had been representing iDesta Solutions, LP, in negotiations with Hill, Marrocco would be unable to escape personal liability. Because there was never a company named iDesta Solutions, LP, Marrocco would have been an agent of a nonexistent principal. As such, he would be personally liable for any contract he made on behalf of that company. *See Carter v. Walton*, 469 S.W.2d 462, 471 (Tex. Civ. App.—Corpus Christi 1971, writ ref'd n.r.e.) ("As a general rule, one who contracts as an agent in the name of a nonexistent or fictitious principal, or a principal without legal status or existence, renders himself personally liable on the contracts so made.") (quoting 3 Am. Jur. 2d *Agency* § 295 (1962)); *see also* Restatement (Third) of Agency § 6.04 (2006) ("Unless the third party agrees otherwise, a person who makes a contract with a third party purportedly as an agent on behalf of a principal becomes a party to the contract if the purported agent knows or has reason to know that the purported principal does not exist or lacks capacity to be a party to a contract.").

We now turn to Marrocco's argument that enforcement of the forum-selection clause would be unreasonable and unjust. This argument places a heavy burden on Marrocco, and he has failed to meet it.

Marrocco argues that it is "inherently unjust" to require a U.K. resident to litigate in Texas when he has no contacts to Texas outside the contract at issue. This argument is untenable. Personal jurisdiction is a right intended to protect an individual, and an individual may bargain away that right. *Tri-State*, 184 S.W.3d at 248. Marrocco bargained away this right by signing the partnership agreement with Hill and consenting to the agreement's forum-selection clause. Thus, enforcing the forum-selection clause against Marrocco is neither unreasonable nor unjust.

* * *

For the foregoing reasons, we affirm.


/s/    Jeffrey V. Brown
        Justice


Panel consists of Justices Brown, Boyce, and McCally.