**Affirmed and Majority and Dissenting Opinions filed June 4, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00534-CV

---

### BAKER HUGHES INCORPORATED, Appellant

### V.

### ROBERT E. BROOKS, Appellee

---

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2012-02744**

---

## DISSENTING OPINION

Today the court is asked to determine whether the trial court erred in dismissing a plaintiff corporation's contract claims against an individual defendant for lack of personal jurisdiction. The corporation, appellant Baker Hughes Incorporated, asserts that appellee Robert E. Brooks consented to personal jurisdiction by means of forum-selection clauses in the contracts under which Baker Hughes seeks to recover in this case. Because Brooks was a party to these contracts (and the forum-selection clauses contained within them) when the

contracts were signed, when this suit was filed, and when he was served with citation, Brooks consented to personal jurisdiction, so the exercise of personal jurisdiction over him in a suit to enforce the contracts would not violate the Due Process Clause of the United States Constitution.

***Brooks had the burden to show that he did not consent to personal jurisdiction and that the Texas court's exercise of personal jurisdiction over him would violate the Due Process Clause, an issue governed by federal law.***

In its petition, Baker Hughes asserted that Brooks was a party to the Settlement Agreement and promissory note.[1] Baker Hughes also asserted that Brooks was bound by the forum-selection clauses in these two contracts, in which the parties agreed to resolve disputes concerning these contracts in Harris County, Texas. The Settlement Agreement purports to be an agreement between BJ Services Company, a subsidiary of Baker Hughes, and Delphi Consulting, Inc., a Louisiana corporation. Though Brooks signed the Settlement Agreement and promissory note, the contracts reflect that he signed them on behalf of Delphi Consulting, Inc., a Louisiana corporation, as its President.

In its petition, Baker Hughes asserted that there is no Louisiana corporation named Delphi Consulting, Inc., and Brooks did not dispute this assertion. Instead, in his special appearance, Brooks asserted that Delphi Consulting, Inc. was erroneously described as a Louisiana corporation in the contracts and that Delphi Consulting was actually a Delaware corporation. This Delaware corporation was not in good standing with the state of Delaware either when the contracts were signed in November 2010 or when suit was filed against Brooks and citation served on him in January 2012. Shortly after Brooks was served with citation, this Delaware corporation was brought back into good standing with the State of

---

[1] Copies of the Settlement Agreement and promissory note were attached to the petition.

Delaware. Brooks attached a certificate from the State of Delaware showing that Delphi Consulting—whose charter was previously void under Delaware law—was currently in good standing and had paid all its franchise taxes.

In its response to Brooks's special appearance, Baker Hughes submitted the following testimony from Brooks's deposition:

- Delphi Consulting was an operator of two or three wells in Mississippi in 1995 and did some business with BJ Services Company at that time.

- Delphi Consulting stopped serving as operator of these wells in approximately 1997 and ceased doing business at that time.

- Subsequently, Delphi Oil, Inc., a sister company to Delphi Consulting was operating and doing business with BJ Services Company. Nonetheless, BJ Services Company sent their bills to Delphi Consulting, even though Delphi Oil, rather than Delphi Consulting, was operating the wells.

- Delphi Oil paid the invoices sent to Delphi Consulting.

- Brooks noticed that the invoices were being sent to Delphi Consulting rather than Delphi Oil, but continued doing business in that manner.[2]

Brooks did not plead or prove that the forum-selection clauses are invalid or unenforceable, nor did Brooks maintain that the claims in this case are not within the scope of these clauses. Rather, Brooks asserted that these clauses are not binding on him in his individual capacity and that he signed the Settlement Agreement and promissory note only in his capacity as agent of Delphi Consulting. Notably, Brooks had the burden of negating this basis of personal jurisdiction and

---

[2] Brooks stated: "We never asked them to bill Delphi Consulting, we never told them to bill Delphi Consulting. They just did it and we thought, well, you know, they—you know, that the big credit department can't get this straight so we just pay them, you know, regardless of who they bill."

3

showing that he did not consent to personal jurisdiction through these forum-selection clauses.[3]  If Brooks is bound by these forum-selection clauses, then he has consented to the exercise of personal jurisdiction over him in this case, and the trial court should have denied his special appearance.[4]

The Supreme Court of Texas has held that Texas law allows Texas courts to exercise personal jurisdiction over a defendant as long as the assertion of personal jurisdiction does not violate the Due Process Clause of the United States Constitution.[5]  Thus, the requirement that the exercise of personal jurisdiction complies with state law and federal due process reduces to a single question of whether the exercise of personal jurisdiction complies with federal due process.[6] This is a question governed by federal law, rather than by state law.[7]

***The issue is whether the federal Due Process Clause allows the exercise of personal jurisdiction over Brooks based upon the forum-selection clauses, not whether Brooks is liable on the claims Baker Hughes asserts against him.***

Because today's task is to determine jurisdiction, not liability, the court must

---

[3] *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *Tri-State Building Specialties, Inc. v. NCI Building Sys., L.P.*, 184 S.W.3d 242, 247 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

[4] *See Marrocco v. Hill*, No. 14-10-01077-CV, 2011 WL 5009489, at *3–4 (Tex. App.—Houston [14th Dist.] Oct. 20, 2011, pet. denied) (mem. op.); *Tri-State Building Specialties, Inc.*, 184 S.W.3d at 247–49.

[5] *See Moki Mac River Expeditions*, 221 S.W.3d at 575; *Tri-State Building Specialties, Inc.*, 184 S.W.3d at 248.

[6] *See Moki Mac River Expeditions*, 221 S.W.3d at 575; *Tri-State Building Specialties, Inc.*, 184 S.W.3d at 248.

[7] *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, —U.S.—,—, 131 S.Ct. 2846, 2853–54, 180 L.Ed.2d 796 (2011); *D.J. Investments v. Metzler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985); *Moki Mac River Expeditions*, 221 S.W.3d at 575;  *Tri-State Building Specialties, Inc.*, 184 S.W.3d at 248.

focus on the jurisdictional inquiry rather than ultimate liability on the claims asserted. As Brooks himself points out in his appellate briefing, in determining whether the Due Process Clause allows Texas courts to exercise personal jurisdiction over Brooks in this case, this court is not to consider the merits of Baker Hughes's claims or whether Brooks may be held liable to Baker Hughes for failure to pay the promissory note.[8] Thus, the issue at hand is not whether Texas law or Delaware law provides that Brooks may have liability on the promissory note; the issue is whether, under federal due process law, Brooks may be held to have consented to personal jurisdiction by means of the forum-selection clauses.[9]

***Brooks did not carry his burden of showing that the exercise of personal jurisdiction over him in this case would violate the Due Process Clause.***

When Brooks signed the contracts containing the forum-selection clauses in November 2010, Delphi Consulting was not in good standing, its charter was "void," and all powers conferred upon Delphi Consulting were inoperative.[10] When Baker Hughes sued Brooks in January 2012, and had citation served on him in the case under review, the status of Delphi Consulting was the same. Shortly after being served and before Brooks filed his special appearance, Delphi Consulting brought itself back into good standing, so that its charter was no longer void and its corporate powers were restored.[11] The court's focal point in this personal-jurisdiction analysis should not be on the restorative powers of Delaware

---

[8] *See Information Services Group, Inc. v. Rawlinson*, 302 S.W.3d 392, 397–98, 407 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *Weldon-Francke v. Fisher*, 237 S.W.3d 789, 792–94 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

[9] *See Marrocco*, 2011 WL 5009489, at *3–4; *Information Services Group, Inc.*, 302 S.W.3d at 397–98, 407; *Weldon-Francke*, 237 S.W.3d at 792–94; *Tri-State Building Specialties, Inc.*, 184 S.W.3d at 247–49.

[10] *See* Del. Code Ann. tit. 8, § 510 (West 2013).

[11] *See* Del. Code Ann. tit. 8, § 312(e) (West 2013).

law but on whether, under federal law, due process would be violated if a Texas court exercised jurisdiction over one who signs contracts agreeing to a Texas forum.

At the time Brooks signed the contracts with BJ Services Company and at the time Baker Hughes sued Brooks to enforce them, Delphi Consulting (Brooks' purported principal) was charterless and inoperative. Hence, Brooks was not acting as agent vis-à-vis a third party but individually. Unless the third party agrees otherwise, one who makes a contract with a third party purportedly as an agent on behalf of a principal becomes a party to the contract if the purported agent knows or has reason to know that the purported principal lacks capacity to be a party to a contract.[12] Brooks made contracts (the Settlement Agreement and promissory note) with BJ Services Company, purportedly as an agent of Delphi Consulting, Inc., a Louisiana corporation. Because BJ Services Company did not agree otherwise, Brooks is a party to these contracts in his individual capacity if Brooks knew or had reason to know that the purported principal lacked capacity to be a party.[13] And, he did.

According to his own testimony, Brooks knew that the entity that had been dealing with BJ Services Company regarding the services and materials in question was Delphi Oil—not Delphi Consulting. This testimony indicates that Brooks signed the Settlement Agreement and promissory note knowing that Delphi Oil should be the entity executing these agreements, and knowing that Delphi Consulting had not been actively conducting business for a number of years. Though Delphi Consulting still may have existed, Brooks, as President of Delphi

---

[12] *See Marrocco*, 2011 WL 5009489, at *4, n.4.

[13] *See id.*

Consulting, had reason to know that this corporation was not in good standing,[14] that its charter was void, and therefore, that it lacked capacity to be a party to these contracts.[15]

Applying these legal principles in the federal due-process analysis, Brooks was a party to the Settlement Agreement and promissory note in his individual capacity when he signed these contracts in November 2010, and when he was sued and served with citation in January 2012. The forum-selection clauses in these contracts, in unambiguous language, apply to all "parties."[16] Thus, in November 2010, and in January 2012, Brooks was bound by the forum-selection clauses and consented to the exercise of personal jurisdiction over him by the Texas court.[17]

The majority concludes that, under Title 8, section 312(e) of the Delaware Code, the renewal and revival of Delphi Consulting validates all contracts purportedly entered into on behalf of Delphi Consulting.[18] Even presuming that, under Delaware law, the renewal and revival of Delphi Consulting retroactively makes Delphi Consulting a party to the Settlement Agreement and promissory note in lieu of Brooks, this conclusion does not change the fact that Brooks was a party

---

[14] *See id.*

[15] Brooks's special appearance, which Brooks verified, contained a statement that "[w]hen suit was filed, it was learned that Delphi Consulting had fallen out of good standing in the State of Delaware; however, it has been reinstated and is now in good standing." In this statement, Brooks stated that "it was learned"; he did not say "I learned that Delphi Consulting had fallen out of good standing." In any event, this statement does not address whether Brooks had reason to know that Delphi Consulting was not in good standing.

[16] Both forum selection clauses apply to "the parties," an undefined term in each contract.

[17] *See Marrocco*, 2011 WL 5009489, at *3–4; *Tri-State Building Specialties, Inc.*, 184 S.W.3d at 247–49.

[18] *See* Del. Code Ann. tit. 8, § 312(e). The majority also states that this renewal and revival precludes Brooks from being liable on these contracts. But, as discussed above, whether Brooks is liable on the contacts, is not at issue in this appeal. *See Information Services Group, Inc.*, 302 S.W.3d at 397–98, 407; *Weldon-Francke*, 237 S.W.3d at 792–94.

to the contracts and consented to personal jurisdiction in Harris County, Texas, from November 2010 through January 2012. Nor does this conclusion require this court to retroactively erase Brooks' consent to personal jurisdiction under federal law for the purposes of determining whether the exercise of personal jurisdiction over Brooks in this case would violate the Due Process Clause of the United States Constitution.[19] As explained above, Brooks was a party to the contracts and consented to personal jurisdiction through the forum-selection clauses when Brooks signed these contracts. And, Brooks was a party to the contracts when Baker Hughes sued him to enforce them. Even when served with citation in this case, Brooks was a party to these contracts. For these reasons, exercising personal jurisdiction over Brooks in this case would not violate the Due Process Clause, regardless of the operation of Title 8, section 312(e) of the Delaware Code.[20]

The majority cites the opinion of a Delaware Superior Court judge.[21] But, the part of the opinion on which the majority relies involves the construction of the Delaware long-arm statute rather than a due process analysis.[22] In addition, the Delaware court found the long-arm statute and the Due Process Clause were satisfied under another analysis, so the cited portion appears to contain only obiter dicta.[23]

---

[19] *See Goodyear Dunlop Tires Operations, S.A.*, —U.S. at —, 131 S.Ct. at 2853–54; *D.J. Investments*, 754 F.2d at 545; *Moki Mac River Expeditions*, 221 S.W.3d at 575; *Tri-State Building Specialties, Inc.*, 184 S.W.3d at 248.

[20] *See Marrocco*, 2011 WL 5009489, at *3–4; *Tri-State Building Specialties, Inc.*, 184 S.W.3d at 247–49.

[21] *See Plummer & Co. Realtors v. Crisafi*, 533 A.2d 1242, 1245 (Del. Super. Ct. 1987).

[22] *See id*.

[23] *See id*. at 1245–48. Brooks cites *ACS Partners, LLC v. Gross*, No. 01-11-00245-CV, 2012 WL 1655547, at *4 (Tex. App.—Houston [1st Dist.] May 4, 2012, no pet.). As the majority correctly points out, *ACS Partners* is not on point because it did not involve forum-selection clauses and because it addressed a Texas statute that imposed *liability* on directors or officers of

For the reasons stated above, Brooks did not satisfy his burden of showing that the exercise of personal jurisdiction over him would violate the Due Process Clause of the United States Constitution.[24] Accordingly, this court should reverse the trial court's granting of Brooks's special appearance and remand for further proceedings. Because it does not, I respectfully dissent.


/s/    Kem Thompson Frost
Justice


Panel consists of Justices Frost, Christopher, and Jamison. (Jamison, J., majority).

---

a corporation for certain corporate debts. *See id*. at *3–4.

[24] *See Marrocco*, 2011 WL 5009489, at *3–4; *Tri-State Building Specialties, Inc.*, 184 S.W.3d at 247–49.