**AFFIRMED in part, REVERSED and RENDERED in part, and REMANDED; and Opinion Filed November 8, 2022**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-19-01551-CV**
_____

**WARREN CHEN AND DYNACOLOR, INC., Appellants**

**V.**

**RAZBERI TECHNOLOGIES, INC., THOMAS J. GALVIN, LIVEOAK VENTURE PARTNERS I, L.P., LIVEOAK VENTURE PARTNERS 1A, L.P., KENNETH L. AND VIRGINIA T. BOYDA, AS TRUSTEES OF THE BOYDA FAMILY REVOCABLE TRUST DATED 10/12/1990, AND JIRI AND ROSEMARY MODRY, AS TRUSTEES OF THE JRAM TRUST UDT 8/21/1996, Appellees**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-16568**

## MEMORANDUM OPINION ON REMAND

Before Justices Schenck, Smith, and Garcia
Opinion by Justice Smith

This case returns to us on remand from the Supreme Court of Texas. Appellants Warren Chen and DynaColor, Inc. appeal the trial court's denial of their special appearances. Because we conclude that the trial court has personal jurisdiction over all of appellees' claims against appellants, except their claim asserted in Count II, we affirm the trial court's order denying appellants' special

appearances as to appellees' causes of action in Counts I, III, IV, V, VI, and VII; reverse and render an order granting appellants' special appearances as to Count II; and remand this case to the trial court to conform the judgment according to and consistent with this opinion.

**Factual and Procedural History**

The underlying facts and procedural history are well-known to the parties and have been set out in our prior opinions as well as the supreme court's opinion; thus, we will limit our discussion of the facts and procedural history to those relevant to determine whether the trial court had personal jurisdiction over appellants.

On April 28, 2021, this Court reinstated its prior opinion concluding that the special appearance order merged into the final judgment and that, because appellants failed to file a timely notice of appeal from the final judgment, the interlocutory appeal[1] became moot. *Chen v. Razberi Techs., Inc.*, 639 S.W.3d 105, 107 (Tex. App.—Dallas 2020), *rev'd*, 645 S.W.3d 773, 775 (Tex. 2022). We, therefore, dismissed the interlocutory appeal. *Id.* The supreme court disagreed that the jurisdictional issue presented in the interlocutory appeal became moot and explained that, under Rule 27.3 of the Texas Rules of Appellate Procedure, this Court should have treated the interlocutory appeal as a premature notice of appeal when the interlocutory order merged into the final judgment. *Chen v. Razberi Techs., Inc.*,

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (permitting an appeal from an interlocutory order that grants or denies a special appearance under TEX. R. CIV. P. 120a, which allows a defendant to specially appear and object to the court's personal jurisdiction over the defendant).

645 S.W.3d 773, 783 (Tex. 2022). The supreme court further explained that this Court should have addressed the personal-jurisdiction issue and, thus, reversed and remanded the case to this Court "to consider only the merits of the personal-jurisdiction issue." *Id.*

## Issues Raised

In their opening brief, appellants listed eight issues[2] for our review and generally argued that the trial court erred by denying their special appearances. In their supplemental brief filed in conjunction with their response to appellees' motions for rehearing and en banc reconsideration, appellants more concisely framed their issue as whether the trial court incorrectly denied their special appearances when: (a) the forum selection clause relied on by appellees is in a contract appellants did not sign, and appellees have presented no cognizable legal theory or sufficient evidence supporting enforcement of the clause against appellants as nonparties; (b) there is no evidence appellants' contacts with Texas are continuous and systematic as to establish general jurisdiction; (c) there is no evidence that a substantial connection exists between appellants' contacts with Texas and the facts

---

[2] The eight issues appellants listed in their "Issues Presented" section are as follows: (1) Did the Court err in finding that appellees sufficiently pleaded and proved jurisdictional facts?; (2) Did the Court err in finding that appellants failed to disprove all jurisdictional facts alleged by appellees?; (3) Did the Court err in considering appellees' alter ego argument?; (4) Did the Court err in finding that jurisdiction over appellants in Texas is consistent with fair play or substantial justice?; (5) Did the Court err, as the evidence was legally insufficient to support any presumed findings that would support specific or general jurisdiction over DynaColor?; (6) Did the Court err, as the evidence was factually insufficient to support any presumed findings that would support specific or general jurisdiction over DynaColor?; (7) Did the Court err, as the evidence was legally insufficient to support any presumed findings that would support specific or general jurisdiction over Chen?; and (8) Did the Court err, as the evidence was factually insufficient to support any presumed findings that would support specific or general jurisdiction over Chen?

–3–

underlying appellees' claims; and (d) exercising jurisdiction over appellants would offend the notions of fair play and substantial justice.

We treat appellants' appeal as one global issue of whether the trial court erred by denying their special appearances and include the four sub-issues listed above in our analysis. Because this Court invited further briefing on the merits in conjunction with the motions for rehearing and en banc reconsideration, we decline to conclude, as appellees suggest, that appellants waived certain issues in their opening brief by failing to adhere to the briefing rules or that it was inappropriate for appellants to submit a new, substantive brief. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); TEX. R. APP. P. 38.7 ("A brief may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe.").

**Personal Jurisdiction**

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that appellate courts review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). Often, however, a trial court must resolve questions of fact before deciding the question of jurisdiction. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When a trial court does not issue findings of fact and conclusions of law in conjunction with its special

appearance ruling such as in the case here,[3] all facts necessary to support the judgment that are supported by the evidence are implied. *Id.* at 795. These implied findings may be challenged for legal and factual sufficiency when the appellate record includes the reporter's and clerk's records. *Id.* If the relevant facts are undisputed, the appellate court need not consider any implied findings of fact and considers only the legal question of whether the undisputed facts establish personal jurisdiction. *Old Republic*, 549 S.W.3d at 558.

Texas courts may assert personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Texas long-arm statute is satisfied when a nonresident defendant does business in Texas, which includes "commit[ing] a tort in whole or in part" in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2); *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021); *Moki Mac*, 221 S.W.3d at 574. The exercise of personal jurisdiction over such nonresident defendant is constitutional when (1) the nonresident defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports

---

[3] Although appellants filed a request for findings of fact and conclusions of law, the record does not contain a notice of past due findings or reflect that the trial court made findings of fact and conclusions of law.

with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795.

A nonresident defendant's contacts with the forum state can give rise to general or specific jurisdiction. *Luciano*, 625 S.W.3d at 8. General jurisdiction is established when the defendant has continuous and systematic contacts with the forum, rendering it essentially at home in the forum state, regardless of whether the defendant's alleged liability arises from those contacts. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). Specific jurisdiction is established when the nonresident defendant's alleged liability arises from or is related to the defendant's activity conducted within the forum state. *BMC Software*, 83 S.W.3d at 796.

A party may also expressly consent to personal jurisdiction or waive the right to challenge personal jurisdiction in a specific forum by agreeing to submit to that forum through a forum selection clause. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985). When parties freely negotiate in an arms-length transaction to include a forum selection clause in a written agreement, the clause is valid and enforceable unless the opponent establishes a compelling reason not to enforce it, such that enforcement would be unreasonable or unjust or that the clause was procured by fraud. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10–15 (1972). Thus, when a party contractually consents to jurisdiction in the forum state, it is not necessary to analyze whether the party established minimum contacts with the forum

state thereby conferring personal jurisdiction. *In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014) (orig. proceeding).

The plaintiff bears the initial burden to plead sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Once the plaintiff has met the initial burden of pleading sufficient jurisdictional allegations, the defendant bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.* If the defendant presents evidence in its special appearance disproving the plaintiff's jurisdictional allegations, the burden shifts back to the plaintiff to establish the court has personal jurisdiction. *Id.* at 659. The plaintiff should amend the petition if it lacks sufficient allegations to bring the defendant under the long-arm statute or if the plaintiff presents evidence that supports a different basis for jurisdiction in the special appearance response. *Id.* at 659, 659 n.6. Raising jurisdictional allegations for the first time in a response to the special appearance is not sufficient. *Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 128–29 (Tex. App.—Dallas 2021, no pet.) (en banc); *see also Kelly*, 301 S.W.3d at 658 n.4 ("additional evidence merely supports or undermines the allegations in the pleadings").

### Jurisdictional Allegations in Original Petition

Appellees Razberi Technologies, Inc., Thomas J. Galvin, LiveOak Venture Partners I, L.P., LiveOak Ventures Partners 1A, L.P., Kenneth L. and Virginia T. Boyda, as Trustees of the Boyda Family Revocable Trust Dated 10/12/1990, and Jiri and Rosemary Modry, as Trustees of the JRAM Trust UDT 8/21/1996 brought suit against Chen and DynaColor alleging fraud, fraudulent inducement, and breach of fiduciary duty in relation to a stock purchase agreement between Razberi, of which Galvin was president, and the remaining appellees.[4] Appellees further alleged that DynaColor was a non-resident corporation that had conducted business in Texas, that Chen was a Taiwanese national who resided in Taiwan and had conducted business in Texas, and that this lawsuit arose out of, and is related to, DynaColor and Chen's activities in Texas. "Each of the Defendants purposefully availed themselves of the privileges and protections of Texas law in the matters related to the claims stated in this lawsuit, and it would not be fundamentally unfair to hale them into Court into Texas."

The appellees also alleged that Razberi's principal place of business was in Dallas County; Razberi was "formed as the joint-venture vehicle between Galvin and DynaColor"; DynaColor was its majority shareholder; Chen was the CEO of DynaColor and one of two of Razberi's directors; DynaColor sold components of

---

[4] Appellees also brought suit against Avigilon Corporation and Avigilon USA Corporation, which are not parties to this appeal.

network video recorder (NVR) systems to Razberi to use in manufacturing and selling the Razberi systems; Razberi sold systems to Avigilon; and DynaColor guaranteed certain aspects of Razberi's contract with Avigilon. When Chen informed Galvin that DynaColor would no longer be investing in Razberi, Razberi sought investors elsewhere. The business relationship between Razberi and Avigilon was critical to the investors' decision to invest in Razberi through a Stock Purchase Agreement. Ultimately, the investors (the LiveOak entities, the Boydas, and the Modrys) contributed approximately $3,500,000 to Razberi.

DynaColor and Chen were not parties to the Stock Purchase Agreement. However, in connection with the Stock Purchase Agreement, Razberi and DynaColor entered into a Purchase Agreement under which Razberi would continue to order parts from DynaColor and DynaColor would provide product repair services to Razberi. Razberi also agreed to immediately pay certain amounts due to DynaColor from the invested funds.

Avigilon subsequently reduced its order forecast and then completely stopped ordering from Razberi and instead began ordering from DynaColor directly. Generally, appellees allege that appellants secretly decided to cut Razberi out by moving forward with a plan for DynaColor to usurp Razberi's corporate opportunities to wrongfully compete against Razberi despite Chen's fiduciary duties to Razberi and its shareholders and that appellants failed to disclose such information during the stock purchase negotiations.

–9–

Appellees met their initial pleading burden to bring appellants within the provisions of the Texas long-arm statute by alleging that appellants conducted business in Texas and that the claims asserted in the lawsuit arose out of and were related to their activities in Texas. *See Far East Machinery Co. v. Aranzamendi*, No. 05-21-00267-CV, 2022 WL 4180472, at \*4 (Tex. App.—Dallas Sept. 13, 2022, no pet. h.) (mem. op.) (plaintiff met initial burden of pleading sufficient allegations to permit court's exercise of personal jurisdiction by pleading defendant "is engaged in business in the State of Texas"); *Saidara*, 633 S.W.3d at 129 ("A plaintiff's petition satisfies the long-arm statute when it alleges the defendant did business, which includes committing a tort in whole or in part in Texas.").

However, appellees did not allege in their original petition that the trial court had general jurisdiction over appellants[5] or that appellants consented to jurisdiction through a forum-selection clause in an agreement entered into by the parties. Nor did appellees allege generally that appellants entered into agreements with appellees[6] or incorporate or attach such agreements to their original petition. *See Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 247 (Tex. App.—

---

[5] Furthermore, appellees did not argue that the trial court had general jurisdiction over appellants in their response to appellants' special appearances or at the hearing on appellants' special appearances, and appellees acknowledge in their supplemental brief in this Court that they never argued the trial court had general jurisdiction over appellants.

[6] The original petition does reference "related agreements" to the Stock Purchase Agreement, specifically the Purchase Agreement between Razberi and DynaColor, which provided that Razberi would continue to order parts from DynaColor and DynaColor would provide product repair services to Razberi. However, besides the Purchase Agreement, the petition does not name the other "related agreements," set out who the agreements were between, or explain their content.

Houston [1st Dist.] 2005, no pet.) (concluding it was appropriate for trial court to consider agreement containing forum selection clause when ruling on special appearance because agreement was incorporated into and attached to original petition); *see also Leary v. Coinmint, LLC*, No. 14-20-00375-CV, 2022 WL 1498197, at *1, 3 (Tex. App.—Houston [14th Dist.] May 12, 2022, no pet.) (mem. op.) (plaintiffs satisfied initial burden by asserting in their amended petition that their claims fell under a valid forum selection clause). Appellees also failed to amend their original petition to include such allegations. *See Kelly*, 301 S.W.3d at 659, 659 n.6.

Because general jurisdiction and consent to jurisdiction by forum selection clauses were not alleged in appellees' petition as a basis for personal jurisdiction, the trial court could not rely on either theory to support a finding of personal jurisdiction over appellants. We now turn to whether appellees carried their burden in response to appellants' special appearances, other pleadings, affidavits, and evidence presented at the hearing to establish that the trial court did have specific jurisdiction over appellants as pleaded. *See* TEX. R. CIV. P. 120a(3) ("The court shall determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony.").

## Minimum Contacts with Texas

To exercise specific jurisdiction over a nonresident defendant, the defendant's contacts with the forum state must be purposeful and the cause of action must arise from or relate to those contacts. *Moki Mac*, 221 S.W.3d at 575–76. We therefore focus on the relationship among the forum, the defendant, and the litigation. *Id.* To determine whether a defendant's contacts are purposeful, the court should consider only the defendant's contacts with the forum state, not the unilateral activity of a third party. *Id.* at 575. The contacts cannot be random, fortuitous, or attenuated, and the defendant must seek some benefit, advantage, or profit by availing himself of the jurisdiction. *Id.* "A defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id.* (quoting *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)).

For a cause of action to arise from or relate to the nonresident defendant's contacts, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585. Plaintiff's claim

–12–

does not have to arise "but for" the defendant's contacts, and the defendant's contacts are not required to be the "proximate cause" of liability. *TV Azteca*, 490 S.W.3d 53. "Instead, we consider what the claim is 'principally concerned with,' *Moncrief Oil [Int'l Inc. v. OAO Gazprom]*, 414 S.W.3d [142,] 157 [Tex. 2013], whether the contacts will be the 'focus of the trial' and 'consume most if not all of the litigation's attention,' and whether the contacts are 'related to the operative facts' of the claim, *Moki Mac*, 221 S.W.3d at 585." *Id.* "[I]f the actionable conduct occurs in Texas, we have never required that the lawsuit also arise directly from the nonresident defendant's additional conduct." *Luciano*, 625 S.W.3d at 18. "The relevance of the additional conduct . . . is not to establish that those contacts constitute [defendant's] minimum contacts with Texas, but to establish that the actionable conduct in Texas itself constitutes minimum contacts" by showing that the defendant purposefully availed itself of Texas. *TV Azteca*, 490 S.W.3d at 54.

We must analyze jurisdictional contacts on a claim-by-claim basis, unless all claims arise from the same forum contacts. *Moncrief Oil*, 414 S.W.3d at 150. Here, appellees brought seven causes of action against appellants; not all claims involve the same appellees and same appellants:

(1) Count I (Fraud and Fraudulent Inducement): the investors alleged that appellants committed fraud by making material misrepresentations and omissions that they knew were false, or that they recklessly made as positive assertions without any knowledge of their truth, and fraudulently

–13–

induced the investors to enter into the Stock Purchase Agreement and related agreements by making such misrepresentations and omissions.

(2) Count II (Fraud by Nondisclosure): the investors alleged that appellants concealed from, or failed to disclose to, the investors that DynaColor planned to, and did, usurp the opportunity to sell the NVR systems to Avigilon in competition with Razberi.

(3) Count III (Statutory Fraud under TEX. BUS. & COM. CODE ANN. § 27.01): the investors alleged that appellants made a false representation to them for the purpose of inducing them to enter into the Stock Purchase Agreement and that they relied upon the false representation in entering into the agreement.

(4) Count IV (Violation of Texas Securities Act): the investors alleged that Razberi offered or sold securities to the investors by means of an untrue statement of a material fact or omission; that Chen, as Razberi's director, knew the untruth or omission; that his knowledge may be imputed to Razberi; that appellants directly or indirectly controlled Razberi and knew of the untruth or omission; and that appellants, with intent to deceive the investors, materially aided Razberi in its actions.

(5) Count V (Negligent Misrepresentation): in the alternative, the investors and Galvin alleged that appellants negligently made material misrepresentations and omissions and intended for the investors and

–14–

Galvin to rely upon their misrepresentations and omissions by investing in Razberi.

(6) Count VI (Breach of Fiduciary Duty): Galvin alleged that Chen owed him a fiduciary duty as a shareholder of Razberi because Chen was a director of Razberi and that Chen breached his fiduciary duties of candor, loyalty, and honesty. Galvin also alleged that DynaColor owed him a fiduciary duty because it was the majority shareholder of Razberi and DynaColor also breached its fiduciary duties of candor, loyalty, and honesty to Galvin. Razberi alleged that, as director, Chen breached his fiduciary duties of candor, loyalty, and honesty to Razberi.

(7) Count VII (Breach of Fiduciary Duty): the investors alleged that Chen owed a fiduciary duty to them because he was a director and they were shareholders of Razberi and that he breached his fiduciary duties of candor, loyalty, and care by usurping and diverting to DynaColor corporate opportunities that belonged to Razberi. Chen further breached his duties through dishonesty and deception regarding his and DynaColor's acts and plans with respect to Avigilon.

The operative facts of Counts I, III, IV, and V, are that appellants made misrepresentations or omissions to the investors, which the investors relied upon in deciding to enter into the Stock Purchase Agreement with Razberi. Some of the

alleged misrepresentations, according to the affidavits of Galvin and the investors, are contained in the Stock Purchase Agreement:

> **3.6    Changes.**   Since the date of the most recent unaudited balance sheet included in the Financial Statements, there has not been:
>
> (a)    any change in the assets, liabilities, financial condition or operating results of the Company from that reflected in the Financial Statements, except changes in the ordinary course of business, that has had a Material Adverse Effect; [or]
>
> . . . .
>
> (m)    to its knowledge, any other event or condition of any character that has had a Material Adverse Effect."
>
> . . . .
>
> **5.1    Representations and Warranties.**   Except as set forth in or modified by the Schedule of Exceptions, the representations and warranties made by the Company in Section 3 shall be true and correct in all respects as of the date of such Closing.

The investors allege that other misrepresentations occurred during Galvin's presentations to them regarding Razberi's business, specifically its business relationship with Avigilon.  But, there is no evidence in the record that appellants were parties to these presentations, assisted Galvin in preparing the documents for the presentations, or approved the presentations.

The record also shows that DynaColor and Chen were not signatories to the Stock Purchase Agreement.  However, according to the investors' affidavits, they "required the Razberi Board of Directors and the existing Razberi shareholders to approve the transaction and the specific agreements" "[a]s a condition for entering

–16–

into the Stock Purchase Agreement and the other contracts." The record supports this contention. The term sheet, which is signed by Chen on behalf of DynaColor, provides in relevant part: "The business, assets, financial condition, operations, results of operations and prospects of the Company are substantially as have been represented to LiveOak and no change will have occurred which, in LiveOak's sole judgment, is or may be materially adverse to the Company." Furthermore, although appellants deny that they negotiated the term sheet in Texas, August 2014 emails between Galvin and Chen show that Chen sent James Chan[7] to Razberi's office, on behalf of DynaColor, to negotiate the terms of the Stock Purchase Agreement and its related agreements. Specifically, Chen wrote:

> After the first glance at the term sheet of Live Oak, and to save time, I think DynaColor also needs someone to help communicate and reflect our concerns effectively and efficiently to Live Oak. So I would assign my legal counsel James Chan to get in touch with you and to work with [Razberi's] attorney to consolidate the case negotiation, he stays in Dallas area and can reach [Razberi] conveniently.

After the meeting, Galvin wrote to Chen memorializing that he met with Chan at the Razberi office and that he believed he understood DynaColor's concerns. He said he would address those concerns in a revised term sheet and then listed the changes including that DynaColor would be placed on equal footing with the new investor so that dividends were shared equally and liquidation priorities were identical,

---

[7] According to his affidavit, James Chan is an attorney licensed to practice in Arizona and Florida, who has handled some legal matters for Chen.

DynaColor would receive $500,000 immediately upon closing toward the past due amount Razberi owed DynaColor, and the remaining balance would then be paid on a schedule. Thus, Chen and DynaColor, through their agent, negotiated the terms of the Stock Purchase Agreement and its related agreements in Texas, on at least one occasion. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 77–78 (Tex. 2016) (owner company's executive had actual and apparent authority to sell owned company shares and actively negotiated their sale in Texas).

Chen executed the Action by Unanimous Written Consent of the Board of Directors on behalf of himself as a director of Razberi and the Action by Written Consent of the Stockholders on behalf of DynaColor as its CEO. The Consent of the Board of Directors authorized Galvin to execute the Stock Purchase Agreement as well as the other related agreements.[8] The Actions of the Board and the Stockholders acknowledge that Razberi is a Delaware Corporation and that the actions are being taken in accordance with Delaware Law and the by-laws of Razberi. Neither expressly references any action to be taken in Texas. However, the Memorandum of Closing provides that the closing took place on November 5, 2014, in Austin, Texas and that "[a]ll of the transactions at the Closing were deemed to take place simultaneously and no delivery or payment was considered made until

---

[8] The agreements executed along with the Stock Purchase Agreement, and approved with written consent by Chen, consisted of the following: Amended and Restated Certificate of Incorporation, Exchange Agreement, Investors Rights Agreement, Rights of First Refusal and Co-Sale Agreement, Voting Agreement, Purchase Agreement with DynaColor, and Promissory Note Payable to DynaColor.

all deliveries and payments were completed." Thus, here, unlike in *Rapaglia v. Lugo*, 372 S.W.3d 286, 291 (Tex. App.—Dallas 2012, no pet.), in which this Court concluded that there was no evidence the nonresident shareholder "had any knowledge of, consented to, or ratified the actions allegedly taken in Texas by her husband" and upon which plaintiff's causes of action were based, Chen and DynaColor knew the agreement was being negotiated and executed in Texas and the alleged misrepresentations in the approved agreement are the very misrepresentations upon which the investors' claims against appellants are based.[9]

*Brumback v. Steele*, No. 03-09-00439-CV, 2010 WL 1633155 (Tex. App.— Austin Apr. 21, 2010, no pet.) (mem. op.), is also instructive. In *Brumback*, the Austin Court of Appeals concluded that three nonresident directors purposefully availed themselves of jurisdiction in Texas when they approved of a deferred compensation plan offered to an independent contractor who they knew worked at the company located in Texas, was offered the plan in Texas, and agreed to the plan in Texas. 2010 WL 1633155, at *1, 4. Similarly, here, Chen, as a director of Razberi, specifically approved the Stock Purchase Agreement. He knew the agreement was being negotiated in Texas and executed in Texas with mostly Texas investors. Likewise, DynaColor, as a shareholder, approved Razberi's issuance of

---

[9] In *Rapaglia*, the focus of plaintiff's suit was a 2003 meeting in Dallas in which plaintiff alleged that the defendants attended and conspired against him for the purpose of defrauding him and other shareholders. 372 S.W.3d at 289. The nonresident wife denied participating in the 2003 meeting and asserted that her sole act as a shareholder was signing, in Florida, a Notice of Action by the Shareholders. *Id.*

–19–

Series A Preferred Stock pursuant to the agreement, knew it was being negotiated and executed in Texas, and enjoyed the benefits of the parties entering into the Stock Purchase Agreement.

We recognize that "[t]here is a subtle yet crucial difference between directing a tort at an individual who happens to live in a particular state and directing a tort at that state." *TV Azteca*, 490 S.W.3d at 43. The mere fact that a nonresident defendant directed a tort at a plaintiff who lives in Texas and allegedly suffered injuries in Texas, without more, does not establish jurisdiction over the nonresident defendant. *Id.* The "'effects' of the alleged tort must connect the defendant to the forum state itself, not just to a plaintiff who lives there." *Old Republic*, 549 S.W.3d at 564 (citing *Walden v. Fiore*, 571 U.S. 277, 287–88 (2014)).

In *Old Republic*, the supreme court distinguished the transfer of Texas-based assets to a nonresident defendant from the transfer of money, a fungible asset, and explained that the transfer of Texas-based business operations and real property derived profit from Texas and created a continuing connection with Texas. 549 S.W.3d at 563–64. Here, in conjunction with the execution of the Stock Purchase Agreement, which the investors allege they were induced into by appellants' misrepresentations and omissions, DynaColor received Preferred Stock in exchange for its common stock, it acquired a new purchase contract with Razberi in which it would continue to sell parts to Razberi in Texas, and it was immediately paid $500,000 out of the sale of the stock. It also received a promissory note, for the

remaining $595,706 that Razberi owed DynaColor under previous purchase agreements, which was enforceable in Texas.

Appellants' control over Razberi and its sale of stock to outside investors was not random, fortuitous, or attenuated. DynaColor willingly invested over two-million dollars into Razberi as a start-up company and became an eighty-five percent shareholder; Razberi was a controlled subsidiary of DynaColor. Chen willingly became a director of Razberi and was involved in regular oversight of Razberi through email communications, including approving Razberi's business plans, being involved in sales strategy and generating leads, obtaining and reviewing financial statements and budgets, and transferring funds for Razberi's operations. Thus, appellants purposefully availed themselves of jurisdiction in Texas.

Although neither party addresses the fact that the Modrys, two of the investors, are California residents, we note that there is not a separate requirement, when exercising personal jurisdiction over a defendant, for the plaintiff to reside in the forum State. *TV Azteca*, 490 S.W.3d at 40–41 (relying on *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770 (1984)). While it is often relevant to the inquiry, the focus is on the relationship between the defendant, the forum, and the litigation, not the plaintiff, the forum, and the litigation. *Id.* The connection between the Modrys' causes of action and Texas is not weak because, like the other investors, they claim to have suffered harm in Texas when they entered into the Stock Purchase Agreement in Texas with a Texas-based company as a result of its director's and

–21–

majority shareholder's misrepresentations and omissions. *Cf. Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cty.*, --- U.S. ---, 137 S. Ct. 1773, 1782 (2017) (holding that the connection between the nonresidents' claims and the forum was weak because the relevant plaintiffs were not California residents, did not claim to have suffered harm in California, and the conduct giving rise to their claims occurred elsewhere).

We conclude that the investors' claims as alleged in Counts I, III, IV, and V arise from or relate to appellants' contacts with Texas and that appellants purposefully availed themselves of Texas. Therefore, the trial court did not err in denying appellants' special appearances as to these four causes of action.

The operative facts of Count II are that appellants failed to disclose to the investors that DynaColor planned to usurp Razberi's contract with Avigilon and, as such, induced the investors into purchasing stock in Razberi. Although we concluded that appellants' approval of the alleged misrepresentations and omissions in the Stock Purchase Agreement arises from or relates to its contacts with Texas, we cannot conclude the same as to the allegation that they failed to disclosure information to the investors before the execution of the Stock Purchase Agreement. There is no evidence that appellants ever met with the investors in Texas. Even when Chan negotiated terms, it was with Galvin, not the investors. The evidence concerning Chen's direct discussions with the investors shows that Chen was in Taiwan and that the investors either reached out to him in Taiwan or visited him in

Taiwan as part of their due diligence in deciding to invest in Razberi. The record otherwise indicates that the investors negotiated directly with Razberi, not appellants. Thus, without more, such as a specific duty to disclose, we cannot conclude that appellants' conduct of sitting mute in Taiwan constitutes directing a tort at Texas or arises from or relates to their contacts with Texas. Therefore, we conclude the trial court did not have personal jurisdiction over appellants as to Count II and erred in denying their special appearances as to that count.

However, we do not reach the same conclusion as to appellees' claims for breach of fiduciary in Counts VI and VII. Although the causes of action concern similar operative facts in that they involve appellants failure to disclose DynaColor's business with Avigilon, they also involve allegations of an ongoing duty and relationship between appellants and various appellees as shareholders and the company itself, not just potential investors to the company as alleged in Count II. There are four fiduciary relationships alleged in Counts VI and VII: (1) between Galvin, as a shareholder of Razberi, and Chen, as a director of Razberi; (2) between Galvin, as shareholder, and DynaColor, as majority shareholder; (3) between Razberi and Chen, as its director; and (4) between the investors, as shareholders, and Chen, as director. In their opening brief, appellants argue that shareholders do not owe fiduciary duties to each other. Appellees argue that, under Delaware law, shareholders do owe fiduciary duties to one another. Whether DynaColor owes a fiduciary duty to Galvin and the other investors is a question regarding the merits of

–23–

the allegations and, thus, not one that we decide when faced solely with the question of whether the trial court has personal jurisdiction over the parties. *See, e.g.*, *Cornerstone Healthcare Grp. Holdings, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 73 (Tex. 2016) ("whether the respondents' conduct was ultimately tortious is not before us and is not relevant to the minimum-contacts analysis").

"[W]hen the claim arises from a breach of fiduciary duty based on a failure to disclose material information, the fact that the [defendant] continually communicated with the forum while steadfastly failing to disclose material information shows the purposeful direction of material omissions to the forum state." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). Appellees allege that Chen, as director, failed to disclose DynaColor's intentions of contracting with Avigilon, Chen's knowledge that Avigilon would eventually cease doing business with Razberi, and Chen's knowledge that DynaColor entered into a non-disclosure agreement with Avigilon regarding their future business relationship. According to the record, these ongoing negotiations occurred before, during, and after the timeframe of when Razberi was seeking investors and the investors executed the Stock Purchase Agreement. After the potential investors became shareholders in Razberi, the record shows that Avigilon began decreasing its orders with Razberi and ultimately ceased ordering from Razberi.

Galvin reached out to DynaColor on several occasions to see if it knew why and specifically asked whether DynaColor was involved. In March 2015, Blake

Yeh, DynaColor's Sales Manager for North America, represented to Galvin via email that DynaColor was not doing business with Avigilon and suggested it might be a different company: "We have not received any call or email from Avigilon regarding to sales or quality issues since you finalized the contract with them." On May 1, 2015, Yeh again represented via email to Galvin that DynaColor was not doing business with Avigilon directly.

To be sure, and because Razberi's board of directors[10] wanted further assurance, Galvin asked Chen directly. On May 28, 2015, Galvin emailed Chen to confirm that DynaColor was not providing NVR technology to Avigilon directly or through another DynaColor partner. Chen responded on May 29, 2015: "We didn't provide NVR technology to Avigilon nor through other third parties." Chen then asked if there was a way Galvin could renegotiate and restore business with Avigilon.

Chen's alleged failure to disclose material information he knew about DynaColor (of which he was CEO) to Razberi (of which he was director) and to its shareholders (Galvin and the investors) while continually communicating to Razberi in Texas about Razberi's business shows that Chen purposefully directed material omissions to Texas. Likewise, DynaColor's failure to disclose its business with Avigilon to Razberi, of which it was a shareholder, when asked and when continuing

_____

[10] The investors, or their representatives—Ben Scott, Krishna Srinivasan, Kenneth Boyda, and Jiri Modry—became members of the board of directors when the Stock Purchase Agreement was executed. Galvin and Chen were the original two directors.

to do business in Texas with Razberi shows it purposefully directed material omissions to Texas.

Furthermore, our earlier analysis of whether appellants' additional conduct showed that they purposefully availed themselves of jurisdiction in Texas as to Counts I, III, IV, and V is equally applicable to Counts VI and VII. Appellants chose to form Razberi with Galvin and, although it was formed as a Delaware corporation, they chose for it to be headquartered in Texas. Razberi did business in Texas and many of the contracts between Razberi and DynaColor were governed by Texas law. Additionally, Chen chose to sit on Razberi's board of directors subjecting himself to fiduciary duties, and DynaColor chose to invest in and help manage Razberi as its controlled subsidiary. Therefore, appellants' contacts with Texas were not the result of the unilateral activity of another person. They were purposeful and direct, and appellees' allegations in Counts VI and VII arise from or relate to those contacts.

## Fair Play and Substantial Justice

To be consistent with federal and state constitutional due process guarantees, the exercise of personal jurisdiction over a nonresident defendant must also comply with traditional notions of fair play and substantial justice. *Moncrief Oil*, 414 S.W.3d at 154. Rarely will the exercise of personal jurisdiction over a nonresident defendant not comport with due process guarantees when the nonresident defendant has purposefully availed itself of the forum state and, thus, established minimum contacts with the forum. *Id.* at 154–55. This is because "[r]equiring nonresidents to

comply with the laws of the jurisdictions in which they choose to do business is not unreasonable, burdensome, or unique." *TV Azteca*, 490 S.W.3d at 56.

To determine whether exercising personal jurisdiction over a nonresident defendant comports with traditional notions of fair play and substantial justice we examine the following factors, if applicable: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies. *Moncrief Oil*, 414 S.W.3d at 155. For a resident of another country, not just another state, we also consider the burdens placed on the defendant in defending itself in a foreign legal system, the state's regulatory interests, the procedural and substantive policies of other nations whose interests are affected, and the federal government's interest in its foreign relations policy. *TV Azteca*, 490 S.W.3d at 55.

Although subjecting Chen and DynaColor to suit in Texas may be burdensome to them because the distance between Taiwan and Texas is great, distance alone cannot defeat personal jurisdiction. *Moncrief Oil*, 414 S.W.3d at 155. Chen also asserts that traveling to Texas for litigation would be expensive and an undue hardship for him because he would be away from DynaColor and, as CEO, he needs to be present in Taiwan to run his company. However, DynaColor has already participated in arbitration and litigation with Razberi in Texas due to

–27–

Razberi's failure to pay DynaColor amounts owed under the November 2014 contract and promissory note associated with the Stock Purchase Agreement. *See DynaColor, Inc. v. Razberi Techs., Inc.*, 795 F. App'x 261 (5th Cir. Jan. 9, 2020) (unpublished per curiam opinion). Therefore, "[a]ny added burden on [appellants to litigate this case in Texas] is relatively minimal and does not outweigh Texas's interest in adjudicating a dispute involving the alleged usurpation of a corporate opportunity in Texas involving Texas assets." *Cornerstone*, 493 S.W.3d at 74. Moreover, DynaColor consented to suit in Texas in various agreements it entered into with Razberi and the investors, and as CEO of DynaColor, Chen should have anticipated traveling to Texas to participate in DynaColor's litigation should such arise. *See Cap. Tech. Info. Servs., Inc. v. Arias & Arias Consultores*, 270 S.W.3d 741, 752 (Tex. App.—Dallas 2008, pet. denied).

Additionally, the interests of Texas in adjudicating the tort claims that appellants allegedly committed against appellees in Texas is high. *See Moncrief Oil*, 414 S.W.3d at 155. Appellees' interest in obtaining relief in Texas is also high as the Stock Purchase Agreement and related documents were executed in Texas, Razberi is located in Texas, and all but one appellee is a Texas resident. Furthermore, although Taiwan may also have an interest in resolving controversies regarding whether its residents committed tortious acts, Taiwan's interest is not as high as Texas's interest because Texas is where the alleged torts were committed or, at the very least, directed. And, appellees' suit against Avigilon, which did not

challenge the trial court's jurisdiction, would proceed in Texas regardless of appellants' presence. The most efficient way to resolve disputes is in one proceeding instead of splitting litigation into multiple proceedings across multiple jurisdictions. *TV Azteca*, 490 S.W.3d at 55. We conclude that this is not one of those rare occasions where exercising jurisdiction over a nonresident defendant, who has minimum contacts with Texas, offends traditional notions of fair play and substantial justice. *See Moncrief Oil*, 414 S.W.3d at 156.

### Conclusion

We conclude that the trial court had personal jurisdiction over appellants as to Counts I, III, IV, V, VI, and VII and did not err in denying their special appearances as to those counts. We further conclude that the trial court did not have personal jurisdiction over appellants as to Count II. Therefore, we affirm the order of the trial court as to Counts I, III, IV, V, VI, and VII and reverse and render an order granting appellants' special appearances as to Count II. We remand this case to the trial court to conform its judgment with the opinion of this Court.

/Craig Smith/
CRAIG SMITH
JUSTICE

Schenck, J., concurring and dissenting.

191551F.P05

–29–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WARREN CHEN AND
DYNACOLOR, INC., Appellants

No. 05-19-01551-CV     V.

RAZBERI TECHNOLOGIES, INC.,
THOMAS J. GALVIN, LIVEOAK
VENTURE PARTNERS I, L.P.,
LIVEOAK VENTURE PARTNERS
1A, L.P., KENNETH L. AND
VIRGINIA T. BOYDA, AS
TRUSTEES OF THE BOYDA
FAMILY REVOCABLE TRUST
DATED 10/12/1990, AND JIRI
AND ROSEMARY MODRY, AS
TRUSTEES OF THE JRAM TRUST
UDT 8/21/1996, Appellees

On Appeal from the 193rd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-16568.
Opinion delivered by Justice Smith.
Justices Schenck and Garcia
participating.

In accordance with this Court's opinion of this date, the order of the trial court denying appellants WARREN CHEN AND DYNACOLOR, INC.'s special appearances is **AFFIRMED** as to appellees' causes of action in Counts I, III, IV, V, VI, and VII, and **REVERSED** as to appellees' causes of action in Count II. We **RENDER** an order granting appellants' special appearances as to Count II. We **REMAND** this cause to the trial court to conform its judgment with this Court's opinion.

It is **ORDERED** that appellees RAZBERI TECHNOLOGIES, INC., THOMAS J. GALVIN, LIVEOAK VENTURE PARTNERS I, L.P., LIVEOAK

–30–

VENTURE PARTNERS 1A, L.P., KENNETH L. AND VIRGINIA T. BOYDA, AS TRUSTEES OF THE BOYDA FAMILY REVOCABLE TRUST DATED 10/12/1990, AND JIRI AND ROSEMARY MODRY, AS TRUSTEES OF THE JRAM TRUST UDT 8/21/1996 recover their costs of this appeal from appellants WARREN CHEN AND DYNACOLOR, INC.


Judgment entered this 8th day of November 2022.